[No. 27573-9-I.   Division One.   August 10, 1992.]

DOUGLAS R. HENDEL, ET AL, *Respondents,* v. JAMES R. MEDLEY, ET AL, *Appellants.*

*Alan K. Willert* and *Foster, Pepper & Shefelman,* for appellants.

*Thomas D. Adams* and *Newton, Kight, Adams & Castleberry,* for respondents.

WEBSTER, A.C.J. — James Medley appeals an order of the trial court finding him accountable to Douglas Hendel for payments made by Hendel on a note signed by both parties as "makers". Medley claims the trial court erred since the evidence establishes he signed as an "accommodation party". We agree and reverse.

## FACTS

In 1980, Medley (along with his wife Odette Trujillo) joined with Hendel to form the El Gaucho Restaurant (a subchapter S corporation). Medley and Trujillo were to hold a 45 percent interest as would Hendel (a silent partner held 10 percent); $278,000 was borrowed from Seafirst Bank with the shareholders serving as guarantors.

In 1982, after El Gaucho began experiencing financial difficulties, Seafirst refused to renew the loans. In September of 1982, financing was switched to First Interstate Bank in order to pay off the Seafirst loan. Trujillo, who had substantial sums of money available, loaned the corporation $91,035.46 in cash in return for a promissory note for $92,946.81. El Gaucho also executed a promissory note for the same amount in favor of Hendel on the premise Hendel would supply an equal amount of cash as that forwarded by Trujillo (apparently this was done to keep the contributions of the two families equal).

Hendel's contribution was to consist of funds borrowed from First Interstate. According to Medley, in order for Hendel to borrow these funds, First Interstate required Medley to sign the note as a co-maker. On November 1, 1982, Hendel

and Medley executed a promissory note in favor of First Interstate in the amount of $91,035.46. Upon receiving the money from First Interstate, it was turned over to the corporation to pay off the Seafirst loan. El Gaucho also executed a promissory note in favor of First Interstate in the amount of $83,964.54 dated November 1, 1982, and signed by Medley as president and Hendel as secretary.

The payments on the notes were to consist of profits earned by the corporation. Payments on the Trujillo note were made directly to her. Payments on the Hendel note, rather than going directly to him, went to First Interstate to pay on the note which represented Hendel's contribution to pay the Seafirst loan.

On November 15, 1983, when the Hendel note became due (with $75,000 owing), Medley and Trujillo were experiencing marital difficulties whereby Trujillo demanded Medley be removed as president.[1] First Interstate was willing to renew the note, but Medley, who was no longer president of the corporation, refused to sign as maker. Hendel, therefore, signed the renewal note himself. On June 4, 1985, Hendel signed another renewal (for $58,000) and had the Bank add the corporation as a maker (since the corporation had been making the payments). Payment was completed on October 30, 1987.

Hendel subsequently sued Medley for contribution on the November 1, 1982, note. The trial court, finding against Medley for the sum of $31,237 (half of each payment made by Hendel) together with prejudgment interest of approximately $12,000, stated:

> Although Mr. Medley clearly signed the original note as a co-maker, he claims that he is an accommodation party. RCW 62A.3-415(3) provides that one may establish one's position as an accommodation party with oral proof. However, in the case at issue, there is insufficient evidence to establish such a claim. The affidavit of Mr. David Patnode at First Interstate Bank indicates that the parties who signed in their individual capacity were to be individually liable on the obligation. Additionally, Mr. Medley's attempt to show his status as an accommodation party on an individual note of Mr. Hendel as a stock-

---

[1]Trujillo and Medley were subsequently divorced. Pursuant to a settlement, Trujillo acquired all of Medley's interest in El Gaucho stock.

holder lacks credibility because the corporation made payments on the note up until September of 1985 under the direction of Mr. Medley as President.

DISCUSSION[2]

■ Under RCW 62A.3-415(5), "[a]n accommodation party is not liable to the party accommodated". Except as against a holder in due course without notice of the accommodation, which Hendel was not, "the accommodation character may be shown by oral proof." RCW 62A.3-415(3). According to 1 J. White & R. Summers, *Uniform Commercial Code* § 13-14 (3d ed. 1988), there are two types of parol evidence sufficient to prove accommodation status:

> According to 3-415(1) the accommodation party must show that he signed the instrument for the "purpose of lending his name to another party to it." *Since receipt of proceeds from the instrument or other direct benefit would generally be inconsistent with accommodation status, courts focus on that aspect of the transaction.* Thus if father and son sign a note for the purchase of a truck and both use it in a partnership business, the father is not simply "lending his name" to the son but is getting a more direct benefit from the truck and is not an accommodation party. *If the creditor would have refused the loan to the other party but for the supposed surety's signature, this will make the party strongly resemble an accommodation party.*

(Footnotes omitted. Italics ours.) 1 J. White & R. Summers, at 660-61. We adopt this test and find that Medley's accommodation party status was established by either means.

---

[2]As a preliminary matter, we note that the trial court's reasons for finding Medley had not met his burden of establishing he was an accommodation party are flawed. The first of these reasons, the bank officer's statement that each party was individually liable to the bank on the note, ignores the nature of an accommodation party. Indeed, Medley would be equally liable to the *bank* since that is the designated function of an accommodation maker. However, the bank officer's opinion is irrelevant regarding the liability between the two parties. The second reason, that the corporation (as opposed to Hendel personally) had made payments on the note, ignores the fact that each family unit contributed approximately $91,000 and received a promissory note in return. The Trujillo/Medley family contributed cash whereas the Hendel contribution was borrowed personally from First Interstate. Each month the corporation made equal payments on the two notes: the payments on the Trujillo note went to that family whereas the payment to the Hendels went directly to the bank. The fact that the corporation made payments on the note is irrelevant in light of the fact that it owed Hendel the money which Hendel owed the bank and the scheme was designed merely to eliminate the middle person. See *infra*.

First, the evidence establishes that Medley did not receive any proceeds or other direct benefit from the loan, thereby providing proof of Medley's accommodation party status. Hendel claims Medley was benefited since the proceeds from the loan were in turn loaned to the corporation for corporate purposes (*i.e.*, to pay the Seafirst loan) and there is no evidence Hendel was to repay the debt since the corporation issued the payments.[3] We disagree. In *Riegler v. Riegler*, 244 Ark. 483, 426 S.W.2d 789 (1968), husband and wife both signed as makers of a note and were subsequently divorced. The payee secured judgment on the note and the husband sued the ex-wife for contribution. The wife argued she was an accommodation party. The court refused to find accommodation party status on the basis that the wife had received benefits from the proceeds of the note since the proceeds were used to build a house in which she held a half-interest. In *MacArthur v. Cannon*, 4 Conn. Cir. Ct. 208, 229 A.2d 372 (1967), two corporate officers, who owned 100 percent of the stock, executed a note and deposited the proceeds in the corporation's account to pay off corporate debts. One maker ended up paying the note and then suing the other maker for contribution. The appellate court affirmed the trial court's finding that the defendant was not an accommodation maker since the proceeds were used to pay corporate debts (and the defendant's signature was not needed for the plaintiff to obtain the loan).

Although the situation encountered here is somewhat analogous to *Riegler*, *MacArthur*, and White & Summers' "father-son-truck" example, it is distinguishable. In *Riegler*, the party claiming accommodation status was benefited since the proceeds went to a community house. In *MacArthur*, the proceeds went to pay corporate debts where both makers were the sole shareholders. In the White and Summers example, the truck was used in a father-son partner-

---

[3]According to Hendel, it was never intended that any specific portion of the borrowings from Seafirst or First Interstate be designated as the Hendel or the Medley debt and instead, the money was originally borrowed by the corporation and continued as such with all the shareholders as guarantors.

ship. Here, due to the nature of the corporate setup, the proceeds were for Hendel's benefit since the loan was to match the contribution of the Trujillo/Medley "community" contribution. This fact is evidenced by First Interstate's notation on an asset report stating the purpose of the credit was so Hendel could "match equity contributions of his former partner James Medley." Furthermore, in response to Hendel's argument (apparently adopted by the trial court) that there was no evidence the loan was Hendel's responsibility alone since the corporation was issuing payments, we find that the note from El Gaucho to Hendel evidences Hendel's responsibility on the note from First Interstate. The evidence establishes that payments were made by the corporation to Medley/Trujillo on their note from the corporation and an identical payment was also made to Hendel to keep the two families equal. The corporation, rather than passing the money through Hendel, simply made the payment directly to First Interstate on the loan Hendel obtained to match the Medley/Trujillo family unit's contribution.

Second, the evidence also establishes that First Interstate would not have made the loan to Hendel "but for" Medley's signature, thereby providing additional proof of Medley's accommodation party status. Hendel claims the bank would have made the loan regardless of Medley's signature since when Medley refused to sign the renewal note, the Bank did not call the loan due for lack of Medley's participation but instead took a pledge of Hendel's personal assets as collateral for the obligation, thereby relying on Hendel's financial strength alone. However, Hendel's argument ignores the fact that at the time the note was to be renewed, Medley was no longer president of the corporation and his level of involvement in the business had been reduced. This would explain First Interstate's reasoning for renewing the loan on Hendel's signature alone. Furthermore, for the Bank to have foreclosed on the preexisting note would have jeopardized its full recovery (especially considering that payments had been kept current), and the corporation was subsequently added as a maker on the next renewal.

902

We find that Medley's accommodation party status was established by both the "benefit of the proceeds" and the "but for signature" tests.

The judgment is reversed.

PEKELIS and AGID, JJ., concur.