George W. KRUMME, R.H. Krumme, and T.P. McAdams, Jr., Appellees,

v.

D. Mike MOODY, Appellant.

No. 75806.

Supreme Court of Oklahoma.

Dec. 12, 1995.

Rehearing Denied Jan. 18, 1996.

John E. Dowdell, Thomas M. Ladner and Roger K. Eldredge, Norman & Wohlgemuth, Tulsa, and R. Brent Blackstock, Blackstock & Blackstock, Tulsa, for appellees.

Terry W. Tippens and Kevin R. Donelson, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, for appellant.

HARGRAVE, Justice.

Certiorari to Court of Appeals, Oklahoma City Division III, to review an unpublished order of the Court of Appeals. The issue addressed in the present matter is whether a co-maker to a note is entitled to raise surety or accommodation maker status in an attempt to claim defenses available only to persons with the status of surety or accommodation maker.

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

In order to finance the purchase of a bank, the parties to this suit, as co-makers, executed two promissory notes with an aggregate face value of $8,170,000.00. For his share of the parties' joint obligation, the defen-

dant/appellant Moody received 19.547572% of the a holding company that owned the bank's stock, with the balance going to the other comakers, the plaintiffs/appellees Krumme, Krumme and McAdams. The first note was in the face amount of $5,000,000.00, and the second note was in the face amount of $3,170,000.00. The notes were executed on April 20, 1988, and each included language reflecting the makers' understanding that the notes might be renewed or extended by agreement between the holder and any of the makers and that all parties would remain liable on each extension or renewal. The holder of the note was the First National Bank and Trust Company of Tulsa.

On April 29, 1988, Appellant and Appellees executed an agreement and understanding whereby they recognized and agreed on their individual responsibility for the debt. Moody expressly agreed that he had benefited from and was responsible for 19.547572% of the debt. On October 20, 1988 the semi-annual payment under the first master note in the amount of $336,381.55 became due and payable to the Bank. Moody was unable to pay his proportionate share and as a result, Appellees made their share of the payment as well as appellant's share which amounted to $65,754.425. Krumme et al., continued making further payments on Moody's pro-rata share of the notes.

After making Moody's payment, Krumme et al., by agreement with the holder, restructured the $5,000,000.00 note to provide for lower payments over a longer term. The second note was not restructured. Krumme et al., then brought this suit against Moody, seeking a cluster of remedies which related to the two notes and the parties' underlying agreement. The case was tried to the trial court with Krummes' cause of action for specific performance with their cause of action for contribution, and Moody's counterclaims for promissory estoppel, breach of contract, fraud and tortious interference with business relations. The trial court's judgment on all of the causes of action except for the contribution claim were appealed under case No. 75,362. On May 26, 1992, Oklahoma City

Division III of the Court of Appeals affirmed in part and reversed in part and remanded that judgment by unpublished opinion. The parties did not seek certiorari.

It is the trial court's disposition of the contribution equitable cause of action that resulted in the instant matter. Krumme et al. sought to recover from Moody his share of the payments on the two promissory notes which they had paid. At trial the court concluded that the appellant was liable for contribution for the percentage of the debt (19.547572%) for which he was a principal obligor. The trial court entered judgment against Moody amounting to $202,610.81 plus costs, and this appeal followed.

The Court of Appeals agreed with the trial court in that Moody would be liable for the portion of the parties joint debt called for in the parties' agreement, represented by Moody's degree of ownership of the bank stock. However, the Court of Appeals held that Moody would be responsible for his proportionate share of the first two notes, but only up until the time of the reorganization, at which point Moody's obligation would be deemed fully exonerated. The Court reasoned that a co-maker of a note would be a surety for the obligation of the other comakers, just as they would stand as sureties for his obligation. The Court of Appeals stated that co-sureties would be entitled to pro-rata contribution from other co-sureties whose debt they paid.[1] However, the Court of Appeals felt that an alteration in the term of the contract without the consent of Moody, exonerated Moody from the debt.[2] The Court of Appeals applied this rationale not only to the $5,000,000.00 note, but also to the non-restructured $3,170,000.00 note.

## STANDARD OF REVIEW

 This Court, dealing with matters of equity, presumes the district court's findings of fact are correct and will not disturb such findings on appeal unless they are clearly contrary to the weight of the evidence. *Burdick v. Independent School District,* 702 P.2d 48 (Okla.1985); *Arline v. McAmis,* 603 P.2d

---

1. Citing *King v. Finnell,* 603 P.2d 754 (Okla. 1979).

2. Relying on the case *Whale v. Rice,* 173 Okl. 530, 49 P.2d 737 (1935).

1130 (Okla.1979); *A.A. Murphy, Incorporated v. Banfield,* 363 P.2d 942 (Okla.1961). Before we can disturb the order of the trial court, we must determine if the findings in the decree of the trial court are against the clear weight of the evidence, contrary to the established principles of equity.

## A CO–MAKER IS NOT ENTITLED TO RAISE SURETY STATUS MERELY TO REAP THE BENEFITS OF SURETY DEFENSES.

Appellees argue that a co-maker who receives value cannot be an accommodation maker or surety and is thus not entitled to certain defenses available to accommodation makers or sureties. The Appellant contends that since this case sounds in equity, he should be entitled to assert equitable defenses. Furthermore, he asserts that the Oklahoma Commercial Code is inapplicable under the present facts. Finally, Moody asserts that equity is not served in the present case as the appellees have unclean hands.

■ Appellant contends that the Oklahoma Commercial Code does not apply in this matter because the loan in question does not have a fixed interest rate and is not a negotiable instrument because an outside source must be consulted to determine the interest rate. This argument is without merit as we decided in *Goss v. Trinity Savings and Loan Association,* 813 P.2d 492 (Okla. 1991), that a variable interest note can be a negotiable instrument.[3] Furthermore, Moody argues that the question of whether or not this note should fall under the Oklahoma Commercial Code was waived by the Appellees. Moody argues that a party cannot raise a question on review unless he petitions for relief and assigns error on that point. *Johnson v. Wade,* 642 P.2d 255 (Okla. 1982)[4], requires that a litigant, dissatisfied

with an opinion of the Court of Appeals, is required to raise all of the available issues in the petition for certiorari. Appellees have done so. Furthermore, there was no need for Appellees to raise an Oklahoma Commercial Code issue in the petition in error, because as the prevailing parties in the trial court, they did not file a petition in error.

■ Moody also contends that he is relieved of contribution because the Appellees have unclean hands. He argues that the Appellees diverted dividend payments away from him and that through this diversion, he was unable to make payments on the notes. Moody argues that in order for the Appellees to receive equity, they must do equity. In *McDonald v. Humphries,* 810 P.2d 1262, 1269 (Okla.1990)[5], we held:

> Equity does not require that a party have spotless hands to invoke its aid. Not every stain will bar the right of a petitioner for relief. A court should not ordinarily lend its judicial power to support inequitable conduct. However, courts need not always permit a wrongdoer to retain the profits of wrongdoing merely because another party is guilty of transgressing equitable principles.

(citations omitted). Even if Appellees were guilty of wrongdoing, that does not relieve Moody of his contractual duties. Furthermore, we presume the district court's findings of fact are correct and will not disturb such findings on appeal unless they are clearly contrary to the weight of the evidence. In the present case this issue was considered by the trial court against Moody. We find nothing in the record that shows that the trial court's determination is against the clear weight of the evidence.

■ The Appellees argue that a co-maker who receives value is not an accommodation

---

**3.** The instrument in *Goss* had a variable interest rate that was the going T bill rate plus 2½%. In that case, at page 499, we held: "Because the business community considers such a note negotiable, it makes little sense for this court to find otherwise by focusing on a single line in the unofficial text of the code where its official rea-

soning and purpose would direct us to conclude otherwise."

**4.** *Overruled on other grounds. Hough v. Leonard,* 867 P.2d 438, 440 (Okla.1993).

**5.** *Overruled on other grounds. Austin v. Cockings,* 871 P.2d 33, 35 (Okla.1994).

maker[6], and is thus not entitled to certain defenses available to accommodation makers. Other jurisdictions have held that evidence such as this indicates that the person is a primary obligor and thus jointly and severally liable.[7] We expressly apply this rule limited to the facts in the present case.[8] As a non-accommodation maker, Moody is jointly and severally responsible for the debt on the loans.[9]

■ Finding Moody a co-maker, non-accommodating party on the notes shows that although he may be considered a surety for his co-makers debt,[10] he cannot be a surety or accommodation party for any money that benefited him.[11] The Court of Appeal's application of *Whale v. Rice*, 173 Okl. 530, 49 P.2d 737 (1935), finding Appellant was a surety, and the alteration of the terms of the contract without the consent of the surety, releases the surety, does not apply in the

6. *12 O.S. 1981, § 415(1)* defines accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." White and Summers, *Uniform Commercial Code, Third Edition* § 13–13 p. 578 (West 1988) states that "[u]nder the Code the word 'surety' includes all 'guarantors' and all 'accommodation parties.' A 'guarantor' differs from an 'accommodation party' only because he has added some words to his signature and has so altered (slightly or greatly) the liability he would have had if he had simply put his signature on the instrument as a mine run accommodation party." They further stated that "... an accommodation party may appear on the instrument as a maker, acceptor, drawer or indorser and his liability is governed by the Code section on the contracts of parties who sign in these capacities. An accommodation maker's basic liability to a holder is identical to that of any other maker."

7. *In re Estate of Wray*, 842 S.W.2d 211 (Mo.App. E.D.1992); *Branch Banking and Trust Co. v. Thompson*, 107 N.C.App. 53, 418 S.E.2d 694 (1992); *Hendel v. Medley*, 66 Wash.App. 896, 833 P.2d 448 (Div.1 1992); *Glimcher v. Reinhorn*, 68 Ohio App.3d 131, 587 N.E.2d 462 (10 Dist.1991); *McCarthy v. Sessions*, 170 A.D.2d 25, 572 N.Y.S.2d 749 (3 Dept.1991); *Landmark KCI Bank v. Marshall*, 786 S.W.2d 132 (Mo.App.1989).

8. The statute in effect at the time of the execution of the notes did not require that an accommodation party sign the note gratuitously. The comments to *12A O.S.1981, § 3–415* state that the "[c]ode omits the words 'without receiving value therefore.' Most courts have ignored this apparent requirement, and have held that one who signs as a paid accommodation party is controlled by the provision of the NIL." The Uniform Commercial Code Comment notes the omission and further states that "[t]he essential characteristic is that the accommodation party is a surety, and not that he has signed gratuitously, He may be a paid surety, or receive other compensation from the party accommodated."
 It is important to note that this section has been revised. *12A O.S.1991, § 3–419(a)* reads:
 If an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to

the instrument ("accommodation party") signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party for "accommodation".
The change in the statute has eliminated from consideration non-gratuitous signers, and thus only parties that sign without receiving a benefit will be considered accommodation parties.

9. The Supreme Court of Maine has recently addressed this question. In *First NH Bank v. Lawlor*, 600 A.2d 1120 (Me.1992), The Court affirmed the decision of the trial court when the trial court concluded that Lawlor was a co-maker, jointly and severally liable for the balance of several large loans. The trial court granted a motion for summary judgment for the plaintiff on the issue of the status of Lawlor, deciding that he was a primary obligor and not entitled to surety defenses. In that case, the commitment letters and note showed Lawlor as a co-maker, furthermore, other evidence presented by Lawlor revealed that he expected employment, a bonus and ownership in the business for which the loans were secured. The present case is very similar to the case from Maine. Mr. Moody, a bank president employed by Krumme et al., assisted in acquiring banks for the group. For this work, Moody was allowed to participate in the acquisitions. Moody received benefits from signing on the notes, and expected future benefits. Moody's name appears on the notes as a co-maker and there is no indication that he signed the note in the capacity of an accommodation maker.

10. *King v. Finnell*, 603 P.2d 754 (Okla.1979).

11. *Belmont County National Bank v. Onyx Coal Co.*, 177 W.Va. 41, 350 S.E.2d 552 (1986). In *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex. 1985), the Texas Supreme Court opined:
 A comaker occupies a hybrid status. A comaker is in the position of a surety to the extent that he promises to answer for the portion of the debt that benefited his fellow comaker but is not a surety for the portion of the debt for which he personally benefited.

present case. *Whale* involved an oil and gas lease where royalty owners sought to recover from the mineral lessee the sum of $750.00 for annual rentals. The liability of lessee's surety was an issue. Lessee had assigned his rights under the lease, and the court concerned itself with whether such assignment might operate to relieve the surety of liability. However, this Court recognized that where assignment was not prohibited by the terms of the lease, then the liability of the surety would not be affected by the assignment.

In the present case, Moody agreed to renewals or extension. The notes included language reflecting the makers' understanding that the notes might be renewed or extended by agreement between the holder and any of the makers and that all parties would remain liable on each extension or renewal.[12] Moody as a co-maker will not be released of his obligation through equitable defenses as he agreed in advance to renewals or extensions to the notes and he is not a surety to any portion of the loan from which he benefited.

In conclusion, we hold that primary obligors, with present and future interest in a loan, cannot defeat their obligations by raising surety/accommodation maker status. In the present case we find that the district court's finding of fact was correct and we will not disturb as the findings are not clearly contrary to the weight of the evidence.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED IN PART; TRIAL COURT JUDGMENT AFFIRMED.**

KAUGER, V.C.J., and LAVENDER, SIMMS, OPALA and WATT, JJ., concur.

SUMMERS, J., concurs in part and dissents in part.

HODGES, J., recused.

---

12. *The Uniform Commercial Code Comment 2 to 12A O.S.1981 § 3–606,* dealing with Impairment of Collateral reads:

> Consent may be given in advance, and is commonly incorporated in the instrument or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim discharge.

> This comment goes to the defense of Impairment of Collateral or discharge of parties, both of which are accommodation party defenses.