[No. 26153-7-II. Division Two. April 12, 2002.]

PAUL PLEIN, *Appellant*, v. CHESTER LACKEY, ET AL., *Respondents*.

144

*John S. Mills*, for appellants.

*John R. Rizzardi* and *Thomas M. McBride* (of *Cairncross & Hempelmann, P.S.*), for respondents.

QUINN-BRINTNALL, A.C.J. — Lee Cameron paid a debt for which he, as the sole remaining shareholder and corporate officer of Alpen Group, Inc., may have been personally liable. Claiming he took assignment of the note and deed of trust securing it, Cameron then foreclosed on the property securing the instruments and extinguished the liens of all junior creditors. Paul Plein and other junior creditors sued, claiming that Cameron could not take assignment of the note because he was paying off a debt that he owed. Moreover, because the payment extinguished the debt, Cameron had no interest to foreclose. The trial court granted Cameron summary judgment and dismissed Plein's case to enjoin or reverse the trustee sale of property. Plein appeals.

Because we hold that whether Cameron was personally liable on the debt is a material issue of disputed fact, we remand.

## FACTS

Alpen Group, Inc. was formed in 1997 to purchase unimproved property for investment. In April 1997, Alpen purchased a parcel of land from Sunset Investments, financed through a deed of trust and promissory note for $75,000. The corporation's three shareholders/corporate officers (appellant[1] Paul Plein, respondent Lee Cameron, and Bruce White) signed the note individually, and Cameron and White also signed in their corporate capacities (secretary/treasurer and vice president, respectively).

Alpen built a log home on the property with funds borrowed from Columbia State Bank. A separate promissory note and deed of trust secured this debt for $136,500, but the record does not establish whether the officers signed the note individually.

Because the Columbia construction loan was insufficient to pay all trade creditors who worked on the property, Plein

[1] The other appellants are Gray Lumber Company, Olympic Title, Inc., and Delta Painting & Pre-Finish, Inc. They will be referred to collectively as Plein.

(then president of Alpen) issued deeds of trust securing the creditors' interests with the log home as security. At some point Plein was "ousted" as president.[2] Cameron then became president of Alpen and issued himself a deed of trust securing Alpen's debt to him for $30,000 he had previously advanced to pay the various trade creditors.

One of Alpen's trade creditors, Crystal Concrete, sued for payment. As a result of the litigation, Alpen paid off Crystal Concrete, Cameron received all stock in Alpen, and Plein obtained a judgment lien against Alpen for $45,000. Thus the various creditors' priority with secured interests in the log home owned by Alpen were: first, Columbia;[3] second, Sunset; third, the remaining trade creditors; fourth, Cameron; and fifth, Plein.

In October 1998, Columbia purportedly assigned its interest under the deed of trust to Cameron "for valuable consideration." Clerk's Papers at 8. Likewise, on December 7, 1998, Sunset purportedly assigned its interest to Cameron. Cameron characterizes the transactions as follows: "I purchased from Columbia State Bank and Sunset Investments their promissory notes and deeds of trust given by the Alpen Group, Inc." Clerk's Papers at 9.[4] The

[2] The record reveals no dates or details about the ouster. The record is also unclear as to the relative timing of some key events, such as the ouster of Plein, the other court case involving Crystal Concrete that resulted in Cameron's acquisition of all of Alpen's stock, and the payments to Sunset and Columbia. The sequence of events in the facts above comes from the appellant's presentation in his briefs below and to this court. (The respondent does not present a sequence of events.) At the summary judgment hearing, Plein emphasized Cameron's 100 percent ownership of Alpen as a key fact on which to decide the legal effect of his paying Alpen's creditors. Cameron responded that at the time of the payments he did not yet own Alpen outright and that Alpen's board of directors "authorized Mr. Cameron's purchase of the notes from Sunset and Columbia." Report of Proceedings (RP) at 14.

[3] According to Plein's pleadings, Sunset agreed to subordinate its lien to Columbia's. Cameron does not dispute this claim.

[4] At the hearing on summary judgment, Cameron's counsel mentioned that Alpen's board of directors may have authorized these purchases. "And the board of directors of Alpen authorized Mr. Cameron's purchase of the notes from Sunset and Columbia." RP at 14. Plein argued that, if true, such approval implies that Cameron paid on or on behalf of Alpen.

record does not reflect the amounts remaining to be paid on the notes or the amounts Cameron paid for them.

In October 1999, Cameron hired attorney Chester Lackey (also respondent in this action) to foreclose on the property under the purported assignment of the Sunset debt.[5] A Notice of Trustee's Sale dated December 20, 1999, was posted in a conspicuous place on the property indicating that a trustee's sale would take place on March 31, 2000.[6]

Plein and the other junior creditors filed this action on February 7, 2000, to enjoin the trustee sale. They also sought a declaration that the deed of trust being foreclosed was void because the underlying note had been paid and the debt extinguished.

On March 28, 2000, Plein filed a motion for summary judgment. The trustee sale was held as scheduled three days later. Cameron was the only bidder. He bid $245,312.35, which was less than the total debts owed to the various lienholders.

Cameron filed a cross motion for summary judgment, and the parties agreed to hear the two motions on the same day.

Plein asserted there were no facts in dispute, arguing that because Cameron signed the deed of trust and promissory note to Sunset in his personal capacity, he was personally liable on Alpen's debt to Sunset and the money he paid Sunset extinguished the debt. Therefore, he claimed, Cameron had no interest to foreclose, and the trustee sale is null and void.

Cameron contended that he did not pay a debt on behalf of Alpen but, rather, purchased the promissory note and

---

[5] Plein points out in his brief that Cameron foreclosed only on the Sunset note, which was the second lien interest.

Mr. Cameron really had to foreclose the second lien because if he had advertised a foreclosure of the Columbia Bank note, he would have run the risk that someone would bid in more than its (approximate) $135,000 balance, and take the home free and clear of Sunset's $75,000 position which he held. As to the Sunset note which was foreclosed, [Cameron] was at least a guarantor, probably a co-maker. The note itself is somewhat ambiguous.

Br. of Appellant at 11, n.20.

[6] The parties agree that Lackey complied with notice requirements.

deed of trust. He asserted that the endorsements of Sunset and Columbia conclusively established that he is entitled to assume their priority status and foreclose.

Cameron asserted that there were no facts in dispute in order for *his* motion to prevail, but that material facts were in dispute regarding Plein's motion. Without first determining whether Cameron was personally liable on the deed of trust and promissory note the trial court granted summary judgment in Cameron's favor and dismissed Plein's claims with prejudice. Plein appeals. We answer two questions: (1) was summary judgment appropriate when there is a dispute regarding Cameron's personal liability on the debts? And (2) can an individual who is personally liable on a debt purchase an assignment of that debt and then foreclose the property securing that debt, cutting off creditor claims subordinate to the assignment?

## ANALYSIS

 This court reviews motions for summary judgment de novo, engaging in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact *and* demonstrate that the moving party is entitled to judgment as a matter of law. CR 56.

There are two issues on which the parties disagree:[7] (1) whether Cameron was personally liable on the debt[8] and (2)

---

[7] Cameron also argues that Plein offered insufficient evidence to defeat his (Cameron's) motion for summary judgment.

The trial court in this case expressed dissatisfaction with Plein's declaration, but stated that the deficiencies in his declaration were not the basis for granting summary judgment in Cameron's favor. Even if Plein's declaration were deficient

the legal effect of Cameron's payments to Sunset.

■ In his complaint and motion for summary judgment, Plein alleges that Cameron was personally liable on the notes. Cameron denied this allegation in his answer. Whether Cameron was indeed personally liable on one or both of the debts is a question of fact. *Indus. Fin. Co. v. Lovell*, 9 Wn. App. 829, 833, 515 P.2d 1304 (1973) (observing whether party signed note in a personal or in a corporate capacity was question of fact within the discretion of trial court).

Cameron signed the promissory note evidencing the debt to Sunset twice, first above a signature line that read "LEE L. CAMERON, SECRETARY/TREASURER" and then above a line that read, "LEE L. CAMERON, INDIVIDU-ALLY." Clerk's Papers at 17. His wife also signed the note "individually." *Id.* Signing in this way appears to bind Cameron personally on the debt, but the amount still owed on the debt before Cameron paid, and the amount Cameron paid Sunset are issues of material fact that must be decided before the legal question (whether Cameron took assignment of or paid off the debt to Sunset) can be addressed. Because the record raises but does not resolve these issues,

---

under CR 56(e), that only speaks to whether *his* motion for summary judgment could be granted, which is not at issue here. In this appeal we are concerned only with whether the trial court properly granted Cameron's summary judgment motion. Such a motion should be granted only if, from *all* the evidence, reasonable persons could reach but one conclusion. *Wilson v. Steinbach*, 98 Wn.2d at 437.

Cameron's own evidence (together with Plein's claims in his pleadings that Cameron was liable on the note) present the genuine issue of material fact in this case that precludes summary judgment, namely the promissory note showing Cameron's signature over both a line that indicates he signed in his corporate capacity and a line that indicates he signed in his individual capacity.

[8] There are two theories asserted on which Cameron could be personally liable on the debt: First, if the trial court were to find that the capacity in which he signed the note made him liable and second, if the court were to find that Alpen was a legal fiction not separately identifiable from Cameron. *See Morgan v. Burks*, 93 Wn.2d 580, 585, 611 P.2d 751 (1980) (explaining that the corporate entity is disregarded and liability assessed against shareholders in the corporation when the corporation has been intentionally used to violate or evade a duty owed to another).

this case is not ripe for summary judgment.[9] Thus, we hold that the record establishes disputed issues of material fact that the trial court must resolve and we remand.

### The Legal Effect of Cameron's Payments to Sunset and Columbia

Plein contends that Cameron was personally liable on the debt and that Cameron's payments to Sunset could not lead to an assignment of the notes, but could only pay off the debt. Because the payment extinguished the debt, he argues, it precluded any right to subsequently foreclose on the property. Cameron counters that the debt belonged to Alpen—a separate entity for which he was not personally responsible—and that Plein failed to present evidence that Cameron paid the debt "on behalf of" Alpen. Thus, he argues that he (Cameron) independently purchased the claims and security instruments of Columbia and Sunset.

■■ The real difference in the parties' approach is that Plein views the issue as a legal question; namely, what happens when a debtor takes assignment of a debt on which he is liable. And Cameron views it as a factual question; namely that since Plein presented no evidence to dispute the documents showing endorsement, and since he (Cameron) declares that he did not pay on behalf of Alpen, Plein's argument must fail for lack of proof. But the legal significance of a financial transaction is not dictated by the parties' characterization of the transaction; it is a question of law that we review *de novo*.

---

[9] Cameron argues that, regardless of the outcome of the above analysis, Plein's position is moot because he failed to object to the trustee sale and thereby waived his right to do so now.

We cannot resolve this issue on this record. If, on remand, the trial court finds that Cameron was personally liable on the note to Sunset, then the debt was extinguished and Sunset no longer owned anything to "endorse," and Cameron had nothing on which to foreclose. If the trial court finds there was no assignment (because Cameron was liable on the note), the trustee sale was null and void. Because this question depends on the legal significance of Cameron's payment to Sunset, and not the actions of Plein, waiver is irrelevant.

RCW 62A.3-602(a) defines the payment of an instrument:

[A]n instrument is paid to the extent payment is made (i) by or on behalf of a party obligated to pay the instrument . . . .To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged. . . .

An assignment of a claim from a creditor to a debtor is, in legal effect, satisfaction and payment of the debt, and rights based on it are extinguished. *Home Indem. Co. v. McClellan Motors, Inc.*, 77 Wn.2d 1, 5, 459 P.2d 389 (1969). *See also Dial v. Inland Logging Co.*, 52 Wash. 81, 86, 100 P. 157 (1909) (observing "[a]n assignment of a claim by a creditor to the debtor is, in legal effect, a settlement and payment of the claim"). Therefore, if Cameron were personally liable on the debt to Sunset, then Cameron's payment to this creditor satisfied and extinguished the debt, and Sunset endorsed an illusory interest to him.

Cameron repeatedly asserts that the documents conclusively establish that Sunset and Columbia assigned the notes to him because the documents show their endorsement and this assignment entitled him to foreclose.

There are no cases in Washington State that deal with the situation presented here. Cases in other jurisdictions, however, have ruled that "an owner cannot owe himself a debt." *Resolution Trust Corp. v. Indep. Mortgage Servs.*, 519 N.W.2d 478, 482 (Minn. Ct. App. 1994); *Fed. Land Bank of Omaha v. Boese*, 373 N.W.2d 118, 121 (Iowa 1985). Moreover, other courts have recognized that where a debtor pays the creditor the debt is extinguished because no one can be simultaneously debtor and creditor of the same debt. *Kessler v. Tarrats*, 191 N.J. Super. 273, 466 A.2d 581, 587 (Ch. Div. 1983), *aff'd*, 194 N.J. Super. 136, 476 A.2d 326 (App. Div. 1984).

■ If Cameron is found to have been personally liable on the debt (either directly or by identity with Alpen), Cameron/Alpen cannot avoid financial obligations to Plein and the other junior creditors simply by obtaining assignments of the primary creditor's contracts. In a tersely worded opinion a North Carolina court addressed this issue

in *Plymouth Fertilizer Co. v. Pitt-Greene Prod. Credit Ass'n*, 58 N.C. App. 207, 292 S.E.2d 732, 733, (1982):

> [If] the owner of the encumbered property [is] not personally liable for the payment of the deed of trust [and] paid it as a stranger to the indebtedness . . . [he is] entitled to preservation of the lien in his favor. [But] [w]here, as here, a property owner is personally liable to creditor # 1 and borrows funds from creditor # 3 to pay off # 1, he cannot defeat the priority of creditor # 2, who is senior to # 3, by substituting # 3 for # 1. Regardless of whether the landowner personally handed the borrowed money to # 1 in payment of his obligation, the net result is the same: The original debt is discharged and creditor # 1's lien is extinguished.

We agree with the reasoning of the North Carolina court. A property owner who is personally liable on a debt may not purchase the interest of a primary creditor that is secured by his property to cloak himself with the status of that primary creditor and thereby defeat the priority of junior creditors with secured interests in that same property.

We remand for further proceedings consistent with this opinion.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review granted at 147 Wn.2d 1020 (2002).