67 P.3d 1061 (2003)
149 Wash.2d 214
Paul PLEIN, Respondent,
v.
Chester LACKEY and Lee Cameron, Jane Doe Cameron, and their marital community, Petitioners.
No. 72560-8.
Supreme Court of Washington, En Banc.
Argued February 13, 2003.
Decided April 17, 2003.
As Amended on Denial of Reconsideration June 6, 2003.
*1062 Belcher Swanson Lackey Doran Lewis, et al., John Belcher, Bellingham, for Petitioners.
John Mills, Tacoma, for Respondent.
Betts Patterson & Mines, Thomas F. Peterson, Seattle, as amicus curiae on behalf of Washington Land Title Ass'n.
MADSEN, J.
Lee Cameron signed a promissory note both in his corporate capacity and individually, secured by a deed of trust, to purchase property from Sunset Investments for his corporation, Alpen Group, Inc. Later, Cameron paid off the Sunset note. He then sought to enforce the instrument and foreclose the deed of trust when Alpen defaulted. He claims he signed the note as an accommodation party and was therefore entitled to foreclose. We agree. We also agree that the plaintiffs' failure to obtain a preliminary injunction or restraining order barring the nonjudicial foreclosure sale waived any right to contest the validity of the foreclosure. We reverse the Court of Appeals and reinstate the trial court's grant of summary judgment in favor of Cameron.

Facts
In 1997, Paul Plein, Bruce White, and Lee Cameron formed Alpen Group Inc. to buy and sell real estate (the group formerly operated as a partnership). In April 1997, Alpen purchased a lot from Sunset Investments, issuing a promissory note for $75,000 to Sunset with the promise to pay stated: "For value received, ALPEN GROUP, INC., A WASHINGTON CORPORATION, promise(s) to pay to SUNSET INVESTMENTS...." The note was secured by a deed of trust naming Sunset as the beneficiary and Alpen as the grantor. It was signed by Cameron as "Secretary/Treasurer" and by White as "Vice-President". Cameron, his wife, Plein (who was president), and his wife each signed "individually."
Alpen also borrowed $136,500 from Columbia State Bank, executing a promissory note also secured by a deed of trust. Columbia loaned the money in part on Sunset's agreement to subordinate its interest in the property to Columbia's. Alpen commenced constructing a log home on the lot. However, more funds were needed, and Cameron advanced $30,000. The money was still insufficient to complete the project and trade creditors were owed an additional $45,000. Cameron declined to loan any more money to Alpen. The parties state that Plein, as president of Alpen, issued deeds of trust against the log home to secure the debt to the trade creditors.
At some point thereafter, Plein was ousted and Cameron became president. Alpen issued a promissory note for the $30,000 that Cameron had advanced to Alpen, secured by another deed of trust on the property. Then, one of the trade creditors sued Alpen in Thurston County Superior Court. The record does not contain any information about that suit beyond the parties' brief descriptions, but it evidently involved a number of claims and cross-claims resulting in payment to the creditor who sued and a judgment entered against Alpen in favor of Plein for $45,000, which Plein recorded. In addition, Cameron received all the stock in Alpen.
At this point, the creditors, in order of their secured interests in the log home property, were (1) Columbia, (2) Sunset, (3) the unpaid trade creditors, (4) Cameron, and (5) Plein. Any equity remaining in the property would be that of Alpen.
According to plaintiffs, "around the time the Thurston County suit was being litigated," the note to Columbia Bank came due and Columbia refused to extend the loan. Clerk's Papers (CP) at 105. In October 1998, Cameron paid the amount due to Columbia with his personal funds and Columbia endorsed the note to Cameron. In addition, Columbia assigned the beneficial interest in *1063 its deed of trust to Cameron. Then, in December 1998, the pivotal transaction in this case occurred. Cameron paid the amount due Sunset, Sunset endorsed the promissory note for this loan to Cameron, and Sunset assigned its beneficial interest in its deed of trust to Cameron.
By these two transactions, Cameron, as beneficiary of the two deeds of trust originally issued to Columbia Bank and Sunset, claimed secured interests in the property superior to all other secured interests. He also continued to have a secured interest junior to the trade creditors based on his loan of $30,000 to Alpen.
In October 1999, Cameron, as assignee of the Sunset note, hired attorney Chester Lackey to begin nonjudicial foreclosure proceedings as a result of Alpen's default on the Sunset note. All of the secured creditors received notice of the foreclosure informing them that the trustee's sale of the property would be held on March 31, 2000.
On February 7, 2000, Plein and the trade creditors (hereafter Plein) brought this suit against Cameron and Lackey (hereafter Cameron), seeking a permanent injunction barring the trustee's sale and a declaration that the deed of trust was void because the underlying debt had been paid, i.e., there was no default on the underlying debt. Plein did not seek a preliminary injunction or any other order restraining the sale. On March 28, three days before the scheduled sale, Plein filed a motion for summary judgment, claiming that undisputed facts showed that Cameron paid off the Sunset note on behalf of Alpen, thus extinguishing the debt. Plein further claimed that he was entitled to an order declaring that his and the trade creditors security interests were superior to Cameron's and that the foreclosure proceedings were void.
Plein did not obtain a preliminary injunction or restraining order restraining the sale, and on March 31, the trustee's sale occurred. Cameron, the only bidder, bought the property for $245,312.35 (approximately the total of the Columbia, Sunset, and Cameron notes).
On May 1, 2000, Cameron filed a cross-motion for summary judgment. He argued there was no evidence supporting Plein's motion for summary judgment because Mr. Plein's declaration, the only material submitted by Plein, was not made on personal knowledge. Cameron also argued he was entitled to summary judgment because the evidence indisputably established that Cameron purchased the Sunset and Columbia notes and obtained valid assignments of the promissory notes and deeds of trust for his personal benefit, rather than paying on behalf of Alpen. Cameron also argued that Plein failed to timely and properly object to the sale, pointing out Plein did not seek a preliminary injunction or a restraining order in time to restrain the trustee's sale.
The trial court granted Cameron's motion and dismissed Plein's complaint. Plein appealed and the Court of Appeals reversed. That court reasoned that where a person is individually liable on a note and pays it, the individual cannot also foreclose because the debt has been extinguished. The court held that there are disputed facts regarding Cameron's personal liability on the Sunset note that preclude summary judgment. In addition, the Court of Appeals reasoned that if Cameron was personally liable on the note, then Plein's failure to obtain an order restraining the foreclosure sale would make no difference because the debt would have been extinguished, Cameron would have nothing on which to foreclose, and the trustee's sale would be null and void. Plein v. Lackey, 111 Wash.App. 143, 43 P.3d 1268, review granted, 147 Wash.2d 1020, 60 P.3d 93 (2002).
Cameron petitioned for review by this court; his petition was granted. For the first time, he specifically relies on RCW 62A.3-419, a provision in the Uniform Commercial Code, to argue that he signed the Sunset note as an accommodation party, and that as such he had the right, once he paid the note, to enforce the instrument against Alpen and to foreclose the deed of trust.[1] The Washington Land Title Association was granted leave to file an amicus curiae brief in support of the petition for review. Amicus is primarily concerned that the Court of Appeals' decision validates postsale challenges *1064 to trustees' sales based upon defenses to default, leading to instability in land titles where there is a trustee's deed in the chain of title.

Analysis
Application of RCW 62A.3-419 resolves the first issue in this case, whether Cameron signed the Sunset note as an accommodation party. However, before turning to the substantive argument, the initial question is whether Cameron may raise the issue of accommodation status when he (1) did not argue accommodation status under Uniform Commercial Code provision RCW 62A.3-419 (hereafter section .3-419) to the trial court, and (2) he raises the argument for the first time in this court.
The trial court granted summary judgment in favor of Cameron. Generally, an appellate court may affirm a grant of summary judgment on an issue not decided by the trial court provided that it is supported by the record and is within the pleadings and proof. Int'l Bhd. of Elec. Workers v. Trig Elec. Constr. Co., 142 Wash.2d 431, 435, 13 P.3d 622 (2000); Wendle v. Farrow, 102 Wash.2d 380, 382, 686 P.2d 480 (1984); cf. Ertman v. City of Olympia, 95 Wash.2d 105, 108, 621 P.2d 724 (1980) (a superior court decision will not be reversed where the reason given is erroneous if the judgment or order is correct). The parties must have had a full and fair opportunity to develop facts relevant to the decision. Bernal v. Am. Honda Motor Co., 87 Wash.2d 406, 414, 553 P.2d 107 (1976). Moreover, while the general rule is that parties may not raise a new issue for the first time in a petition for review, Fisher v. Allstate Ins. Co., 136 Wash.2d 240, 252, 961 P.2d 350 (1998), "[a] party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground." RAP 2.5(a).
Here, section .3-419 provides an appropriate ground to resolve this case, and the record is sufficiently developed for purposes of this issue. In fact, the record discloses that there is no material issue of fact as to Cameron's status as an accommodation party. Therefore, we consider the applicability and effect of section .3-419.
Section .3-419(1) provides that
[i]f an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to the instrument ("accommodation party") signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation."
The comments to the statute explain that "[a]n accommodation party is a person who signs an instrument to benefit the accommodated party either by signing at the time value is obtained by the accommodated party or later, and who is not a direct beneficiary of the value obtained." RCWA 62A.3-419, cmt. 1, at 161. The issue whether a party is an accommodation party is a question of fact, comment 3 to section .3-419, and the party asserting accommodation party status bears the burden of proof. 11 AM.JUR.2D Bills and Notes § 85, at 449 (2002).
Comment 1 to section .3-419 gives an example of accommodation party status that parallels the facts of this case:
For example, if X cosigns a note of Corporation that is given for a loan to Corporation, X is an accommodation party if no part of the loan was paid to X or for X's direct benefit. This is true even though X may receive indirect benefit from the loan because X is employed by Corporation or is a stockholder of Corporation, or even if X is the sole stockholder so long as Corporation and X are recognized as separate entities.[[2]]
Here, the promissory note states that for value received, Alpen promised to repay the borrowed amount. The direct beneficiary of the loan was the corporation. As a stockholder of Alpen, any benefit obtained by *1065 Cameron was derivative and indirect. See Neil B. Cohen, Suretyship Principles in the New Article 3: Clarifications and Substantive Changes, 42 ALA. L.REV. 595, 600 (1991). Thus, Cameron received no proceeds from and no direct benefit from the loan.
In addition to the direct/indirect benefit inquiry, another factor that serves to establish accommodation party status is that the lender would not have made the loan in the absence of the party's signature on the note giving rise to liability. Hendel v. Medley, 66 Wash.App. 896, 899, 833 P.2d 448 (1992) (decided under former UCC provisions regarding accommodation parties); 11 AM.JUR.2D Bills and Notes § 85 (2002) (two primary factors that indicate accommodation party status are that the party received no direct benefit from the proceeds of the instrument and that the loan would not have been made unless the party signed the instrument). Here, Plein's complaint itself asserts that Sunset would not have loaned the money to Alpen, which had no assets, unless the corporate officers signed individually, thus incurring personal liability. Plein repeats this factual statement in his appellate brief. Appellant's Opening Br. at 4 ("[b]ecause Alpen had virtually no other assets, as is customary in the business, Sunset demanded and obtained the personal guaranties of Alpen's owners"). Plein has repeatedly insisted that Cameron was a personal guarantor of the loan. CP at 63, 101, 105; Verbatim Report of Proceedings (RP) at 10; Appellant's Opening Br. at 10.
Because there are no disputed material questions of fact as to Cameron's status, we conclude as a matter of law that Cameron signed the Sunset note as an accommodation party.[3] Cameron obtained no direct benefit from the loan, and Plein has conceded that the loan would not have been made unless the individual stockholders were subject to personal liability on the note.
As an accommodation party who paid off the note, Cameron was entitled to enforce the note: "An accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party." Section .3-419(e). Comment 5 to section .3-419 states that "[s]ince the accommodation party that pays the instrument is entitled to enforce the instrument against the accommodated party, the accommodation party also obtains rights to any security interest or other collateral that secures the payment of the instrument." (Emphasis added.) Once he paid the Sunset note, Cameron obtained the beneficiary's right in the deed of trust and was entitled to foreclose it upon default of Alpen.
We hold that Cameron signed the Sunset note as an accommodation party, and that when he paid off the instrument he obtained the right to enforce the note as well as the beneficiary's rights in the deed of trust securing the note.
The next issue is whether Plein waived any right to complain about the foreclosure and trustee's sale. Cameron has maintained throughout this case that Plein waived any right to set aside the trustee's sale when he failed to obtain a preliminary injunction or other order restraining the sale. The Court of Appeals rejected this argument, reasoning that if Cameron was personally liable on the note and paid it, the debt was extinguished and the trustee's sale null and void. Therefore, "waiver is irrelevant." Plein, 111 Wash.App. at 150 n. 9, 43 P.3d 1268. We disagree.
Three goals of the Washington deed of trust act are: (1) that the nonjudicial foreclosure process should be efficient and inexpensive; (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure; and (3) that the process should promote stability of land titles. Cox v. Helenius, 103 Wash.2d 383, 387, 693 P.2d 683 (1985); Country Express Stores, Inc. v. Sims, 87 Wash. *1066 App. 741, 747-48, 943 P.2d 374 (1997); Joseph L. Hoffmann, Comment, Court Actions Contesting The Nonjudicial Foreclosure of Deeds of Trust in Washington, 59 WASH. L.REV. 323, 330 (1984). The act includes a specific procedure for stopping a trustee's sale so that an action contesting default can take place. RCW 61.24.130(1) provides that junior lien holders may move "to restrain" a trustee's sale "on any proper ground." However, a court cannot grant a "restraining order or injunction to restrain a trustee's sale" unless the person seeking the order has provided five days' notice to the trustee of the attempt to seek the order and has paid amounts due on the obligation secured by the deed of trust. RCW 61.24.130(1), (2). This statutory procedure is "the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure." Cox, 103 Wash.2d at 388, 693 P.2d 683.[4] Under RCW 61.24.040, and the form it mandates for a notice of trustee's sale, recipients are advised that
[a]nyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.
RCW 61.24.040(1)(f)(IX). This statute also includes the form for the notice of foreclosure. That form must explain the right to contest the default by bringing a court action and must advise that a court may grant a restraining order or injunction to restrain a trustee's sale if the five days' notice and payment requirements are satisfied. RCW 61.24.040(2).
Plein was given notice of the trustee's sale and the foreclosure, and was properly advised of his right to seek an injunction or restraining order restraining the sale. Although his complaint sought a permanent injunction and disputed whether there was a default (by alleging the debt had been extinguished), he never sought a preliminary injunction or any order that would have halted the sale, and accordingly did not comply with other requirements such as providing the trustee with five days' notice of any attempt to seek such an order. As one commentator explained,
[t]he injunction action consists of two stages: the temporary injunction and the permanent injunction. The grant of the temporary injunction merely prevents the trustee's sale from taking place until a full hearing on the merits of the permanent injunction can be obtained. The grant or denial of the permanent injunction, on the other hand, constitutes the final resolution of the action.
Hoffmann, 89 WASH. L.REV. at 327. Simply bringing an action to obtain a permanent injunction will not forestall a trustee's sale that occurs before the end of the action is reached. Id. at 334; see 27 Marjorie Dick Rombauer, Washington Practice: Creditors' RemediesDebtor's Relief § 3.61 (1998) (bringing a suit objecting to the alleged default or to the foreclosure proceedings but without obtaining a restraining order does not prevent the sale from going forward). Moreover, if it did, it would render the requirements of RCW 61.24.130 meaningless because it would be unnecessary to obtain an actual order restraining the sale or to provide five days' notice to the trustee and payment of amounts due on the obligation. A statute must not be judicially construed in a manner that renders any part of the statute meaningless or superfluous. Svendsen v. Stock, 143 Wash.2d 546, 555, 23 P.3d 455 (2001).
Nor does an action contesting the default satisfy the requirements of RCW 61.24.130. "[A]n action contesting the default, filed after notice of sale and foreclosure has been received, does not have the effect of restraining the sale." Cox, 103 Wash.2d at 388, 693 P.2d 683.
The failure to take advantage of the presale remedies under the deed of trust act may result in waiver of the right to object to *1067 the sale, as RCW 61.24.040(1)(f)(IX) provides. The Court of Appeals has found waiver in a number of cases involving failure to enjoin the trustee's sale. Specifically, that court has held that waiver of any postsale contest occurs where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale. Country Express Stores, Inc., 87 Wash.App. at 749-51, 943 P.2d 374; Steward v. Good, 51 Wash.App. 509, 515-17, 754 P.2d 150 (1988); Koegel v. Prudential Mut. Sav. Bank, 51 Wash.App. 108, 114, 752 P.2d 385 (1988); Peoples Nat'l Bank of Wash. v. Ostrander, 6 Wash.App. 28, 491 P.2d 1058 (1971); see Hoffmann, 59 WASH. L.REV. at 335. The waiver doctrine applied in this context serves all three goals of the deed of trust act. Adequate remedies to prevent wrongful foreclosure exist in the presale remedies, and finding waiver in these circumstances furthers the goals of providing an efficient and inexpensive foreclosure process and promoting the stability of land titles. Country Express Stores, Inc., 87 Wash.App. at 752, 943 P.2d 374; see Ostrander, 6 Wash.App. at 32, 491 P.2d 1058 ("[t]o allow one to delay asserting a defense [until after the sale] would be to defeat the spirit and intent of the trust deed act").[5]
The waiver doctrine is also consistent with the scheme of the act itself:
The Deed of Trust Act discourages the use of postsale remedies in three ways. First, the Act does not expressly provide for any court actions to contest a completed trustee's sale. Second, the Act indicates that the right to contest a completed sale may be waived by a party's failure to bring a presale injunction action. Finally, the Act requires that the trustee's deed issued to the purchaser "recite the facts showing that the sale was conducted in compliance with all of the requirements" of the Act and the particular deed of trust. This recital of statutory compliance is "prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value." [RCW 61.24.040(7).]
Hoffmann, 59 WASH. L.REV. at 329 (footnotes omitted).[6]
We agree that the waiver rule applied by the Court of Appeals in Country Express Stores, Steward, Koegel and like cases appropriately effectuates the statutory directive that any objection to the trustee's sale is waived where presale remedies are not pursued. See RCW 61.24.040(1)(f)(IX). Applying the waiver doctrine here: Plein received notice of his right to enjoin the sale, had *1068 knowledge of his asserted defense before the sale (that Cameron paid on behalf of Alpen and the debt was extinguished), and failed to obtain a preliminary injunction or other order restraining the sale. We conclude that Plein waived the right to contest the sale.
We hold that by failing to obtain a preliminary injunction or other restraining order restraining the trustee's sale, as contemplated by RCW 61.24.130, Plein waived any objections to the foreclosure proceedings.
The Court of Appeals is reversed and the trial court's grant of summary judgment in favor of Cameron is reinstated.
ALEXANDER, C.J., and JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.
NOTES
[1] The attorneys representing Cameron in this court did not represent Cameron in the Court of Appeals or the trial court.
[2] There is no suggestion in this record or the briefing that Cameron and Alpen Group, Inc., were not separate entities.
[3] An accommodation party may be a maker, a drawer, an acceptor, or an indorser. Section .3-419(b). He or she is liable on the note in the capacity in which he or she signed, usually as a maker or indorser. Cmt. 4, § .3-419. However, the nature of the liability on the note does not dictate whether Cameron was an accommodation party. Instead, the absence of direct benefit, and the fact that Sunset would not have made the loan without individual liability on the part of the stockholders dictate that he signed as an accommodation party.
[4] Of course, an interested party can also halt the foreclosure proceedings by curing the default. RCW 61.24.090.
[5] In this regard, Amicus Curiae Washington Land Title Association is particularly concerned that the stability of land titles is undermined by the Court of Appeals'"implicit[], if not explicit[ holding] that where there is a defense to the note, an interested party need not comply with the requirements of RCW 61.24.130." Amicus Curiae Mem. of Washington Land Title Ass'n in Support of Pet. for Review at 4. Amicus maintains that if a trustee's deed can be challenged after the fact, "title insurers will not insure, secured lenders will not lend on, and buyers will not purchase real property with title tracing to a trustee's deed." Id. at 8.
[6] In Cox, the Coxes granted a security interest in their home in the form of a deed of trust to secure a loan to build a swimming pool. When the pool system failed, they refused to pay further amounts on the loan because the cost to repair the system and the damage it caused exceeded the amount due. When notified they were in arrears on the note, they brought suit for damages. The trustee on the deed of trust brought foreclosure proceedings, and ultimately the Coxes' home was sold for a fraction of its value. This court recited the principles that an action to enjoin the sale was the only means to preclude a sale once foreclosure proceedings began, and that an action contesting default does not act to enjoin the sale. However, the court also held that the Coxes' action was an action on the obligation. Cox v. Helenius, 103 Wash.2d 383, 388, 693 P.2d 683 (1985). Under RCW 61.24.030(4), a trustee may not commence foreclosure proceedings where there is an action pending on the obligation. Thus, the foreclosure sale was invalid on this basis. In addition, the court also found that the extreme disparity between price and value and conduct of the trustee were reasons to set aside the sale. These reasons would not have been known to the Coxes prior to the notice of foreclosure but instead concerned flaws apparent at the trustee's sale itself. Cox is an example of a case where post-sale challenges were permitted. It should be noted, however, that the waiver doctrine would not be applicable under the facts in Cox, both because it involved an action on the obligation and because of the irregularities at the sale.