**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR THE REGISTERED HOLDERS OF MORGAN STANLEY ABS CAPITAL I INC. TRUST 2007-HE2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-HE2<br><br>Respondent,<br><br>v.<br><br>CHRISTOPHER E. LARSON; JOHN/JANE DOE; UNKNOWN OCCUPANTS OF THE PREMISES,<br><br>Appellant. | No. 85454-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

PER CURIAM — Christopher and Angela Larson appeal from the trial court's summary judgment determination declaring unlawful detainer and authorizing a writ of restitution in favor of Deutsche Bank. The Larsons assert that the trial court was biased against them and failed to consider their evidentiary and legal arguments, thereby effecting an unlawful taking of their home. The sole meritorious issue raised is that the trial court's order granting summary judgment did not specifically list all materials called to the trial court's attention before it was entered. But because these materials could not result in a material question of fact warranting trial, the error was harmless. We therefore affirm.[1]

---

[1] On September 5, 2024, the Larsons filed a motion on the merits to reverse. A commissioner of this court ruled that the motion "will be placed in the file without action, with the

I

The facts pertaining to this appeal are largely set forth in this court's opinion affirming the dismissal of two separate lawsuits related to the nonjudicial foreclosure of the Larsons' home. Larson v. Snohomish County, 20 Wn. App. 2d 243, 499 P.3d 957 (2021), review denied, 199 Wn.2d 1016 (2022), cert. denied, 143 S. Ct. 575, 214 L.Ed.2d 341 (2023). Additional pertinent facts are known to the parties and will be discussed herein only when necessary to explain our decision.

II

A

In October 2006, Christopher Larson borrowed $218,000 from New Century Mortgage Company to purchase a house in Snohomish County. Larson, 20 Wn. App. 2d at 253. Christopher and his wife Angela executed a deed of trust securing the loan. Larson, 20 Wn. App. 2d at 253. The Larsons made no mortgage payments after July 2007, with the sole exception of one partial payment made in 2017. Larson, 20 Wn. App. 2d at 253-54. On December 22, 2017, the successor trustee issued a notice of default on behalf of the note holder, Deutsche Bank. Larson, 20 Wn. App. 2d at 254. In February 2018, the successor trustee recorded a notice of trustee's sale and set a sale date in June 2018. Larson, 20 Wn. App. 2d at 254. On June 5, 2018, the Larsons filed an

---

understanding that the panel may review the motion and/or treat it as a supplemental brief as a matter of discretion." The motion is rendered moot by our decision to decide the case by a panel determination memorialized in an opinion.

"Application for 'Torrens' Registration of Title to Land" in Snohomish County Superior Court. Larson, 20 Wn. App. 2d at 254.

The Larsons did not move to enjoin the scheduled nonjudicial foreclosure sale. Larson, 20 Wn. App. 2d at 255. Their property was sold to Deutsche Bank on November 16, 2018. Larson, 20 Wn. App. 2d at 256. On November 21, 2018, the trustee recorded a notice of trustee's sale. Larson, 20 Wn. App. 2d at 256. Deutsche Bank served the Larsons with a 20-day notice to vacate but the Larsons refused to comply.

Meanwhile, on October 18, 2018, the Larsons filed a lawsuit in Skagit County Superior Court alleging several causes of action against numerous public and private defendants, including the State of Washington, Snohomish County, its superior court judges, the successor lender, the foreclosure trustee, and the loan servicer. Larson, 20 Wn. App. 2d at 251-52, 255. The Larsons sought declaratory and injunctive relief compelling the public defendants to comply with the Torrens Act or, alternatively, to quiet title. Larson, 20 Wn. App. 2d at 255. The Larsons also sought damages and injunctive relief against the private defendants for alleged violations of the Consumer Protection Act (CPA)[2] and the "Deeds of Trust Act" (DTA),[3] as well as equitable claims against Deutsche Bank to preclude foreclosure. Larson, 20 Wn. App. 2d at 255-56.

Following a hearing in December 2018, the trial court denied the Larsons' motion for recusal and dismissed all claims against the public defendants without prejudice. Larson, 20 Wn. App. 2d at 256. The court separately granted the

---

[2] Ch. 19.85 RCW.
[3] Ch. 61.24 RCW.

3

private defendants' motion to dismiss with prejudice the Larsons' quiet title claim and transferred their remaining claims to Snohomish County Superior Court. Larson, 20 Wn. App. 2d at 256-57. On November 11, 2019, the trial court granted the private defendants' motions for summary judgment dismissal of all remaining claims against them. Larson, 20 Wn. App. 2d at 258. On August 19, 2020, the trial court denied the Larsons' motion for recusal and granted Deutsche Bank's motion to dismiss their Torrens Act application on the ground that the Larsons no longer owned the property. Larson, 20 Wn. App. 2d at 258.

B

Our decision in Larson resolved the following issues adversely to the Larsons:

1. The trial court did not lack subject matter jurisdiction over the adequacy of the Larsons' Torrens Act application under the "prior exclusive jurisdiction doctrine" or the "priority of action rule." The Larsons invoked the Skagit County Superior Court's jurisdiction by filing a lawsuit in that court and seeking relief for Snohomish County's alleged inaction as to their Torrens Act application. Larson, 20 Wn. App. 2d at 263-65.

2. The trial court did not err in dismissing without prejudice the Larsons' claim that Snohomish County failed to follow mandatory procedures regarding their Torrens Act application. This is so because the Larsons did not file their application with an abstract of title, as mandated by statute. Larson, 20 Wn. App. 2d at 265-67. Moreover, the Larsons had the opportunity to amend their Torrens Act application by filing an abstract of title prior to the nonjudicial

foreclosure sale or by moving to enjoin the sale in order to give them more time to remedy the defect, but chose not to do so. Larson, 20 Wn. App. 2d at 267.

3. The trial court correctly ruled that the public defendants did not have the duty or the authority to force the county or its superior court judges to compel Snohomish County to develop a Torrens Act system. Larson, 20 Wn. App. 2d at 267. Such an order is not authorized by the Torrens Act and would therefore violate the doctrine of separation of powers. Larson, 20 Wn. App. 2d at 268.

4. The trial court did not err in dismissing the Larsons' quiet title claim against the private defendants. This is so because the Larsons' Torrens Act application did not preclude the nonjudicial foreclosure sale, and their failure to move to enjoin the sale waived their quiet title claim. Larson, 20 Wn. App. 2d at 269-71.

5. RCW 61.24.127, the DTA waiver statute, did not unconstitutionally deny the Larsons the right to pursue a common law cause of action against lenders and foreclosure trustees. The statute does not bar such actions; rather, it reasonably requires parties to bring their claims prior to the nonjudicial foreclosure sale. Larson, 20 Wn. App. 2d at 271-73.

6. The Larsons claimed that the trial court erred in dismissing their CPA claim against the private defendants because the October 2006 promissory note was not authentic, the assignment of the deed of trust to Deutsche Bank was invalid, their loan was never funded, and their lender breached its contractual

obligation by refusing to accept the Larsons' August 2007 mortgage payment. But these arguments were either frivolous or unsupported by the record. Larson, 20 Wn. App. 2d at 273-80.

7. The trial court properly granted summary judgment dismissal of the Larsons' constitutional challenges to the DTA. First, the Larsons did not allege state action to support their due process claim and failed to establish a deprivation of due process. Second, the Larsons are incorrect that a 2018 amendment to the DTA impaired their contractual relationship with their lender, thereby depriving the private defendants of authority to foreclose on their home. Third, because the DTA grants the borrower the right to file an action in superior court against the beneficiary of the deed of trust, nonjudicial foreclosure sales do not infringe on the original jurisdiction of the superior courts. Larson, 20 Wn. App. 2d at 280-85.

8. The trial court properly dismissed the Larsons' Torrens Act application because they no longer owned the property after the nonjudicial foreclosure sale and had no statutory right to pursue title registration. Larson, 20 Wn. App. 2d at 285.

9. The trial court did not err by denying the Larsons' motion to amend their complaint to reallege claims against the public defendants and to add additional office holders and entities. The Larsons claimed they had no other way to seek a ruling that Snohomish County and its officials did not comply with the Torrens Act, but they could have remedied the defect in their Torrens

Act petition by filing and recording an abstract of title. Larson, 20 Wn. App. 2d at 285-86.

10. The Larsons alleged that both trial court judges erred by failing to recuse from the cases because the judges had an interest in the outcome. But the Larsons sought to disqualify every judge in both counties in which they filed their cases, so the rule of necessity defeats their assertions of bias. Additionally, the Larsons failed to establish any personal connection between their cases and the judges. Larson, 20 Wn. App. 2d at 286-90.

11. The Skagit County Superior Court did not err in transferring venue to the Snohomish County Superior Court. RCW 4.12.010(1) provides that actions relating to the title of real property must be brought in the county in which the real estate is situated, and the Larsons' lawsuit was an action relating to the title of real property. The Larsons claimed that they were entitled to remain in the Skagit County Superior Court under RCW 4.12.030, which gives courts discretion to change venue when there is reason to believe an impartial trial cannot be held therein. But all Snohomish County superior court judges recused themselves, and a visiting judge was appointed to hear the Larsons' case. Larson, 20 Wn. App. 2d at 289-90.

C

This matter is again before us because, on October 8, 2019, Deutsche Bank filed a complaint for unlawful detainer against the Larsons. In response, the Larsons alleged that Deutsche Bank did not own the property because the nonjudicial foreclosure sale was illegal. On February 25, 2020, Deutsche Bank

filed a motion for summary judgment, along with a declaration in support of its motion. The declaration included as an exhibit an unfiled copy of the Larsons' answer, affirmative defenses, and counterclaims. On March 25, 2020, Deutsche Bank filed an agreed motion and order to continue the trial date and case schedule, and the hearing on Deutsche Bank's motion for summary judgment was stricken the next day.

On February 22, 2022, approximately nine months after this court issued its opinion in Larson, activity in the unlawful detainer case resumed when Deutsche Bank filed a notice of withdrawal and substitution of attorney. On June 21, 2022, Deutsche Bank filed a motion for order to show cause why a writ of restitution should not be entered. The Larsons opposed the motion and filed a supporting declaration.

On October 5, 2022, the Larsons filed their opposition to Deutsche Bank's motion for summary judgment. They argued that the assigned trial court judge was biased, that Deutsche Bank did not meet its burden to establish an absence of material fact related to its right of possession, and that the summary judgment motion filed in February 2020 violated CR 11 because it was not signed and refiled by Deutsche Bank's new attorney. They also asked the court to take judicial notice of voluminous additional materials, including pleadings from unrelated cases and materials regarding the Larsons' former lender's business practices in 2006. On December 15, 2022, the Larsons filed their answer to Deutsche Bank's complaint.

8

On April 20, 2023, the trial court issued an order granting Deutsche Bank's motion for summary judgment. The court also ruled that it would take judicial notice of the pleadings from unrelated cases, but declined to review the remaining materials.

The Larsons moved for reconsideration under CR 59. They argued that the trial court erred by failing to designate in its summary judgment order materials which the parties brought to the court's attention. They further argued that the trial court should reconsider and reverse its ruling because it inappropriately resolved issues of fact and because the trial court judge should have recused herself.

The trial court granted the Larsons' motion to the extent that the summary judgment order did not set forth the specific materials reviewed, but denied the motion as to the remaining issues. However, the court acknowledged that additional clarification regarding its legal reasoning was required. Accordingly, on May 30, 2023, the court issued a substitute order granting summary judgment. Therein, the court expressly noted that it had considered the following documents in deciding the motion for summary judgment:

1. Plaintiffs' Motion for summary judgment filed on February 25, 2020;
2. Affidavit in Support of motion for summary judgment filed on February 25, 2020;
3. Carson declaration in support of Motion for Summary Judgment dated September 6, 2022;
4. Larsons' Opposition to Motion for Summary Judgment filed on October 5, 2022;
5. Larsons' Answer, Affirmative Defenses, Counterclaims and Crossclaims filed December 15, 2022;
6. Larsons' Motion for Extension of Time filed March 20, 2023;
7. Declaration of Scott Stafne in Support of Motion for Extension of Time filed March 20, 2023;

8. Larsons' Opposition to Motion for Summary Judgment dated April 13, 2023;
9. Stafne declaration in support of Larsons' Opposition to Motion for summary judgment filed on April 13, 2023;
10. Larsons' Request for Judicial Notice filed April 13, 2023.

The court explained that summary judgment was appropriate because there is no pending action seeking to overturn the sale of the home, Deutsche Bank followed the mandatory procedures for foreclosure, the Larsons never sought to enjoin the sale, and the Larsons' lawsuits challenging the foreclosure were dismissed. The court thus concluded that there was no issue of material fact warranting trial on the question of Deutsche Bank's right to possess the property. Accordingly, the court issued an order for writ of restitution.

The Larsons appealed.

III

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. Nichols v. Peterson Nw., Inc., 197 Wn. App. 491, 498, 389 P.3d 617 (2016). When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. Brown v. Brown, 157 Wn. App. 803, 812, 239 P.3d 602 (2010). "The motion should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Mayer v. City of Seattle, 102 Wn. App. 66, 75, 10 P.3d 408 (2000).

We review a trial court's order on reconsideration for abuse of discretion. Rivers v. Wash. State Conf. of Mason Contractors, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002).

IV

The trial court was unquestionably correct in concluding that the Larsons raised no issue of material fact warranting trial on the question of Deutsche Bank's right to possession of the property.

The DTA sets out the procedures that must be followed to properly foreclose a debt secured by a deed of trust. Chapter 61.24 RCW. "The [DTA] has three goals: an efficient and inexpensive process, adequate opportunities for parties to prevent wrongful foreclosure, and stability of land titles." Patrick v. Wells Fargo Bank, N.A., 196 Wn. App. 398, 405, 385 P.3d 165 (2016). To further these goals, the DTA provides a procedure to contest and enjoin a trustee's sale once the grantor has received notice of sale and foreclosure. RCW 61.24.130. "This statutory procedure is 'the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure.'" Plein v. Lackey, 149 Wn.2d 214, 226, 67 P.3d 1061 (2003) (quoting Cox v. Helenius, 103 Wn.2d 383, 388, 693 P.2d 683 (1985)). A party waives "any objection to the trustee's sale . . . where presale remedies are not pursued." Plein, 149 Wn.2d at 229 (citing RCW 61.24.040(1)). Waiver occurs if the party received notice of the right to enjoin the sale, knew of a defense to foreclosure prior to the sale, and failed to petition the court to enjoin the sale. Plein, 149 Wn.2d at 227.

Here, Deutsche Bank purchased the property at the nonjudicial foreclosure sale. It is undisputed that the Larsons did not avail themselves of their statutory right to petition to enjoin the sale. And this court affirmed the dismissal of the Larsons' lawsuits related to the foreclosure and sale.

V

A

In this appeal, the Larsons assign error to the trial court's alleged failure to appropriately perform judicial inquiries pursuant to CR 56 and to consider their evidentiary and legal arguments. They assert numerous issues arising from these alleged errors. They further argue that the trial court abused its discretion pursuant to CR 59 by denying in part their motion for reconsideration and issuing a substitute summary judgment order that failed to comply with controlling law.

We conclude that the Larsons have raised only one meritorious issue: whether the trial court's substitute summary judgment order failed to specifically list all materials called to the trial court's attention before it was entered. See RAP 9.12 (the trial court in its order "shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered"); CR 56(h) ("The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered."). The trial court granted the Larsons' motion for reconsideration to the extent that its summary judgment order did not designate materials which the parties brought to the court's attention, and issued a substitute order designating

10 items. Nevertheless, as the Larsons point out, it appears that the substitute order did not comprehensively designate all documents and evidence called to the attention of the trial court, as is required.

However, for the reasons discussed below, any additional documents could not possibly result in a material question of fact warranting trial. We therefore conclude that the error was harmless. See Budd v. Kaiser Gypsum Co., 21 Wn. App. 2d 56, 79, 505 P.3d 120 (2022) ("'A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case.'" (internal quotation marks omitted) (quoting Nguyen v. City of Seattle, 179 Wn. App. 155, 159 n.2, 317 P.3d 518 (2014))).

B

The Larsons allege that summary judgment was improper because material questions of fact exist as to whether the nonjudicial foreclosure process violated the DTA. They assert that the sale did not comply with RCW 61.24.040, that the original 2006 promissory note was destroyed and replaced with a forged note, that the beneficiary's assignment of the deed of trust to Deutsche Bank was invalid, and that the lender never funded the Larsons' loan. But because they failed to avail themselves of the DTA's presale remedies, any claims of error regarding issues governed by the DTA are statutorily barred. See Plein, 149 Wn.2d at 228 (the DTA contains no provision for setting aside a sale once it has occurred).

Moreover, to the extent the Larsons asserted claims or issues in the unlawful detainer action that they raised or could have raised in Larson, such claims or issues are barred by the doctrines of res judicata and/or collateral estoppel. Generally speaking, res judicata bars the relitigation of claims and issues that were litigated or could have been litigated in a prior action. Loveridge v. Fred Meyer, Inc., 125 Wn.2d 759, 763, 887 P.2d 898 (1995). Res judicata applies where a prior final judgment is identical to the challenged action in "(1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made." Loveridge, 125 Wn.2d at 763. Collateral estoppel applies when "'(1) [t]he issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice." Gosney v. Fireman's Fund Ins. Co., 3 Wn. App. 2d 828, 876-77, 419 P.3d 447 (2018) (internal quotation marks omitted) (quoting Thompson v. Dep't of Licensing, 138 Wn.2d 783, 790, 982 P.2d 601 (1999)).

C

The Larsons raise five issues that are not waived by application of the pertinent statute. But there is no possibility of these claims giving rise to a question of material fact because, even assuming the Larsons' assertions are correct, no relief is available.

1

The Larsons argue that they presented evidence of fraud by Deutsche Bank regarding its assertion of possession of the original promissory note. They allege that the original note was likely destroyed in 2006 and that the note produced at trial was a forgery. This claim is not necessarily barred by statute. See Miebach v. Colasurdo, 102 Wn.2d 170, 685 P.2d 1074 (1984) (a foreclosure sale may be set aside on equitable grounds where the buyer or his successor is not a bona fide purchaser, the price paid for the property is grossly inadequate, and there are "irregularities" surrounding the sale). But this court previously rejected the Larsons' claim that the note was invalid because the signature on the note was a forgery, Larson, 20 Wn. App. 2d at 275-76, so this claim is now barred by collateral estoppel. To the extent that the Larsons attempt to assert new facts in support of this claim, it is also barred by res judicata.

2

The Larsons argue that the superior court judge refused to consider her bias before granting summary judgment in favor of Deutsche Bank. In Larson, this court previously rejected the Larsons' claim that the trial court judges who issued the rulings at issue in that case were self-interested in the outcome and erred by failing to recuse themselves. 20 Wn. App. 2d at 286-89. This was so, the Larson court explained, because the rule of necessity defeats their argument and the Larsons failed to establish any personal connection between the judges and the Larsons' cases. Larson, 20 Wn. App. 2d at 287-88.

The trial court judge in this unlawful detainer action did not participate in the rulings at issue in Larson, so this issue is not barred by collateral estoppel or res judicata. Nevertheless, the same reasoning applies. Under the common law rule of necessity, a judge may decide a case despite having a personal interest in the outcome if "'the case cannot be heard otherwise.'" United States v. Will, 449 U.S. 200, 213, 101 S. Ct. 471, 66 L. Ed. 2d 392 (1980) (quoting FREDERICK POLLACK, A FIRST BOOK OF JURISPRUDENCE FOR STUDENTS OF THE COMMON LAW 270 (6th ed. 1929)); Ignacio v. Judges of United States Court of Appeals for Ninth Circuit, 453 F.3d 1160, 1163 (9th Cir. 2006). The rule of necessity "'provides for the effective administration of justice while preventing litigants from using the rules of recusal to destroy what may be the only tribunal with power to hear a dispute.'" Larson, 20 Wn. App. 2d at 287-88 (quoting Glick v. Edwards, 803 F.3d 505, 509 (9th Cir. 2015)). This rule "has been consistently applied in this country in both state and federal courts." Will, 449 U.S. at 214. It has also "been applied by the highest courts of several common law jurisdictions." In re Remuneration of Judges of Provincial Ct. of P.E.I., [1998] S.C.R. 3 (Can.) at 5.

Here, the Larsons contend that Washington's judicial officers, including the trial judge who ruled in their case, are biased in favor of entities such as Deutsche Bank because their retirement accounts have long been invested in mortgage-backed securities. They cite cases holding that due process requires recusal where "'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" Rippo v. Baker, 580 U.S. 285, 287, 137 S. Ct. 905, 197 L. Ed. 2d 167 (2017) (quoting Withrow v.

<u>Larkin</u>, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)); <u>Williams v. Pennsylvania</u>, 579 U.S. 1, 8, 136 S. Ct. 1899, 195 L. Ed. 2d 132 (2016) (recusal may be required where an unconstitutional potential for bias exists).  But if this argument were to prevail, every judge in Washington would be disqualified from ruling in their case.  The authorities cited by the Larsons in support of their claim do not account for the rule of necessity.  Because this rule applies, no relief is available regarding the Larsons' claim that the superior court judge was biased in Deutsche Bank's favor.

3

The Larsons next argue that evicting them from their home by use of governmental force without public benefit violates the takings clause of the United States and Washington Constitutions.[4]  They contend that the court lacked judicial power to order that the Larsons' home be forcefully taken and awarded to a plaintiff that has no legal or equitable basis for a governmental taking.

This claim arises from the consequences of the unlawful detainer action, so it could not have been raised in the previous litigation.  Regardless, the claim necessarily fails.  As discussed above, the Larsons did not seek to enjoin the nonjudicial foreclosure sale, and their post-sale challenges were dismissed.  The Larsons do not own the property.  Having no recognized property interest in the

---

[4] The takings clause of the Fifth Amendment to the United States Constitution provides, "[N]or shall private property be taken for public use, without just compensation."  Similarly, article I, section 16 of the Washington Constitution provides, "No private property shall be taken or damaged for public or private use without just compensation having been first made."

land, the Larsons cannot demonstrate that the government took their property in violation of due process.

4

The Larsons argue that Deutsche Bank violated CR 11 because its new attorney re-noted the February 2020 motion for summary judgment without refiling it. They point out that the motion was signed by Deutsche Bank's prior counsel before he withdrew and that Deutsche Bank's present counsel did not sign it. They further argue that Deutsche Bank did not respond to this argument below and that the trial court appears to have purposely avoided adjudicating the issue by manipulating the court record so as not to consider it.

"CR 11 requires attorneys to date and sign every pleading, motion, and legal memorandum filed with the court, certifying the pleading motion or memoranda 'is well grounded in fact[,] . . . is warranted by existing law or a good faith argument[,] . . . [and] is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" Just Dirt, Inc. v. Knight Excavating, Inc., 138 Wn. App. 409, 417, 157 P.3d 431 (2007) (alterations in original) (quoting CR 11(b)). "The purpose behind CR 11 is to deter *baseless* filings and to curb abuses of the judicial system." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992).

These concerns are not present here. In a declaration, Deutsche Bank's present counsel stated that he had reviewed the previously filed summary judgment motion and "adopt[ed] all of the legal reasoning in the plaintiff's Motion as if I had authored it myself." And even assuming counsel's failure to refile the

18

motion implicated CR 11, the Larsons do not seek sanctions and the alleged error does not give rise to a material question of fact warranting trial. Relief is unavailable.

5

The Larsons argue that the trial court properly granted their request to take judicial notice of pleadings filed in the lender's bankruptcy proceedings, but that it erred in qualifying its ruling by stating that "their relevance to this case is limited." They contend that the court lacked authority to resolve factual issues pursuant to CR 56. But the court's comment regarding relevance did not resolve any issues of fact. The Larsons also appear to challenge the court's refusal to take judicial notice of materials relating to the lender's alleged practice in 2006 of destroying paper promissory notes in favor of retaining an electronic copy. But even if the court erred in doing so, these materials could not have raised a material issue of fact regarding the Larsons' right of ownership.

The trial court did not err in declaring unlawful detainer and authorizing issuance of a writ of restitution.

Affirmed.

For the Court:

_____
Hazel, A.C.J.

_____
Mann, J.

_____
Smith, C.J.