# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| D. RYAN PATRICK and RHONDA PATRICK, husband and wife,<br><br>    Appellants,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., a national banking association; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington corporation; QUALITY LOAN SERVICE CORPORATION, a California corporation; MCCARTHY & HOLTHUS, LLP, a California law firm; and HSBC BANK, USA, N.A. AS TRUSTEE FOR WELLS FARGO ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2007-AR8, a National Bank as Trustee for a New York common law trust,<br><br>    Respondents. | No. 73827-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED: September 26, 2016 |

LEACH, J. — Ryan and Rhonda Patrick appeal the trial court's summary dismissal of their lawsuit against their mortgage lender and the trustee of their deed of trust. They assert that the lender, Wells Fargo Bank NA, promised them a loan modification but told them that to obtain one they would need to default. The Patricks defaulted, Wells Fargo initiated nonjudicial foreclosure proceedings, and the trustee, Quality Loan Service Corporation, eventually sold the house.

No. 73827-5-I / 2

The Patricks contend Wells Fargo and Quality Loan violated the Consumer Protection Act (CPA)[1] and deeds of trust act (DTA)[2] and were negligent. They asked for damages and injunctive relief. Because the Patricks did not use the DTA's procedure for restraining the sale, they waived all their claims except the CPA claims and the DTA claim against the trustee. And the Patricks presented no evidence that any alleged unlawful act by Wells Fargo caused their injuries or any evidence that Quality Loan violated the DTA or CPA. The trial court did not err in dismissing their claims. We affirm.

## FACTS

In 2007, Ryan and Rhonda Patrick borrowed $435,960 from Wells Fargo. They signed a promissory note and executed a deed of trust encumbering their Bothell home. The deed of trust named Wells Fargo as the lender and beneficiary and Northwest Trustee Services LLC as trustee. Wells Fargo later assigned its interest to HSBC Bank USA National Association. HSBC became the holder of the note while Wells Fargo remained the loan servicer. The Patricks sued both banks, and we refer to them collectively as Wells Fargo.

In 2008, the Patricks requested a loan modification from Wells Fargo. They were both employed and were able to make their monthly payments, but they wanted "to see what their options were" in light of the uncertainty in the

---

[1] Ch. 19.86 RCW.
[2] Ch. 61.24 RCW.

-2-

market. Wells Fargo told the Patricks that there were "multiple loan modification programs available" but they would not qualify if they were current on their payments. Wells Fargo's internal guidelines show that the bank does not consider borrowers for a loan modification unless they are "in Default or Default [is] Imminent." The Patricks claim that Wells Fargo employees advised them on multiple occasions to default on their payments in order to qualify for a loan modification. The Patricks intentionally stopped making their payments in January 2009. They then applied for a loan modification, and Wells Fargo reviewed their application.

Wells Fargo notified the Patricks two months later that the investor who owned their note declined to modify their loan. The Patricks applied again. In early 2010, Wells Fargo instructed them to make three trial-period payments. The Patricks state that Wells Fargo told them that if they made these payments, they would receive a permanent modification with reduced payments and a decreased interest rate. They made the payments. In September 2010, Wells Fargo offered them a forbearance agreement that allowed them to add their missed payments onto the end of their loan without interest but would not

significantly change their monthly payments or interest rate. They accepted.[3] They now contend that this agreement made them financially worse off.

In 2012, the Patricks hoped to get a loan modification with better terms. So they again intentionally defaulted on their payments. They stated in their application that they were experiencing financial hardship and acknowledged that if they had intentionally defaulted, the servicer could pursue foreclosure.

Wells Fargo told them they did not qualify for a loan modification and continued to tell them so in response to later applications. The Patricks claim that Wells Fargo's correspondence during this period confused them. The bank switched their "client contact" numerous times and at varying intervals. It sent them apparently conflicting requests for information. Its mailers urged the Patricks to ask about the Home Affordable Modification Program (HAMP),[4] but the bank repeatedly rejected them for this program. And it alternately informed the Patricks that they were being considered for or had been denied a HAMP loan.

---

[3] The Patricks certified in an "Affidavit of Eligibility" that they "did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification."

[4] To assess whether loans qualify for HAMP—a federal program to help homeowners avoid foreclosure—servicers apply the net present value (NPV) test. NPV "'is essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into foreclosure.'" Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 557 (7th Cir. 2012) (quoting Williams v. Geithner, No. 09-1959 ADM/JJG, 2009 WL 3757380, at *3 n.3 (D. Minn. Nov. 9, 2009)).

The Patricks requested mediation under the Foreclosure Fairness Act (FFA).[5] At a mediation in February 2014, Wells Fargo told the Patricks they did not qualify for a modification.[6] The FFA mediator certified that both parties mediated in good faith. The mediator attached copies of the agreed-upon NPV numbers that the parties used in mediation, the investor restrictions, and e-mails showing Wells Fargo asked the investor to waive restrictions.

The Patricks made no payments on their loan after July 2012. In September 2013, HSBC, acting through Wells Fargo as its attorney in fact, appointed Quality Loan as successor trustee under the deed of trust. In November 2013, Quality Loan sent the Patricks a notice of default about their missed payments. Quality Loan recorded a notice of trustee's sale in September 2014, setting a nonjudicial foreclosure sale for January 2015.

The Patricks asked in November 2014 that Quality Loan stop the trustee's sale. They filed a complaint in December 2014, seeking damages and to enjoin the sale. But they chose not to use the DTA's procedure to restrain the sale. Quality Loan proceeded to sell the house at public auction in February 2015. Quality Loan delivered a trustee's deed to HSBC.

---

[5] RCW 61.24.005, .030-.033, .135, .160-.177; RCW 82.45.030.
[6] The mediation report shows that the inputs the parties provided did not yield an NPV that "exceed[ed] the anticipated net recovery at foreclosure."

All the defendants moved for summary judgment. The Patricks amended their complaint with the court's permission. Both complaints alleged CPA and DTA violations, as well as negligence, intentional infliction of emotional distress, breach of contract, criminal profiteering, and civil conspiracy. The trial court granted summary judgment on all claims. The Patricks appeal.

## STANDARD OF REVIEW

We review a summary judgment order de novo, making the same inquiry as the trial court.[7] We view the facts and all reasonable inferences from them in the light most favorable to the nonmoving party.[8] Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[9] The nonmoving party "must set forth specific facts showing a genuine issue."[10] Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient.[11]

---

[7] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).
[8] Lybbert, 141 Wn.2d at 34.
[9] Lybbert, 141 Wn.2d at 34.
[10] Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).
[11] CR 56(e); Baldwin, 112 Wn.2d at 132.

ANALYSIS

Waiver under the DTA

Wells Fargo contends that the Patricks waived most of their claims by failing to use the restraint procedures the DTA requires.[12] We agree.

The DTA "creates a three-party mortgage system allowing lenders, when payment default occurs, to nonjudicially foreclose by trustee's sale."[13] The act has three goals: an efficient and inexpensive process, adequate opportunities for parties to prevent wrongful foreclosure, and stability of land titles.[14]

To further these goals, RCW 61.24.130 provides a procedure for stopping a trustee's sale.[15] The DTA requires borrowers to use this procedure or risk waiving their objections to the sale.[16] This waiver occurs if the party "(1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a

---

[12] RCW 61.24.130. To restrain a sale, an applicant must give the trustee five days' notice "of the time when, place where, and the judge before whom the application for the restraining order or injunction is to be made" and "pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed." RCW 61.24.130(2), (1).

[13] Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012).

[14] Albice, 174 Wn.2d at 567.

[15] Plein v. Lackey, 149 Wn.2d 214, 225, 67 P.3d 1061 (2003).

[16] Plein, 149 Wn.2d at 227; RCW 61.24.040(1)(f)(IX) ("Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.").

defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale."[17]

In Brown v. Household Realty Corp.,[18] this court held that the plaintiffs waived their tort claims by failing to seek a presale injunction. We reasoned that each of the plaintiffs' claims related to the underlying obligation, that the plaintiffs had constructive notice of their claims, and that those claims would have provided them a defense to foreclosure. We concluded that applying waiver in this situation would further the three goals of the DTA.[19]

In response to the Brown decision, the legislature adopted RCW 61.24.127.[20] RCW 61.24.127(1) lists four types of claim that a plaintiff "may not" waive by failing to use the DTA procedure for obtaining a presale injunction. These include claims against any party for violating the CPA and against a trustee for violating the DTA. Although the Supreme Court has stated that "[w]here applicable, waiver applies only to actions to vacate the sale and not to

---

[17] Plein, 149 Wn.2d at 227. Waiver under these provisions is equitable and applies only where a party knowingly and intentionally relinquishes its rights by not asserting them. Albice, 174 Wn.2d at 569-70.
[18] 146 Wn. App. 157, 169, 189 P.3d 233 (2008).
[19] Brown, 146 Wn. App. at 169.
[20] See Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 425-26, 334 P.3d 529 (2014).

damages actions,"[21] it has not yet decided how RCW 61.24.127 affects that rule.[22]

RCW 61.24.127 does not purport to supersede the entire Brown decision. If the legislature intended to prohibit waiver for any type of damages claim based on the underlying obligation, it could have stated simply, "The failure of the borrower or grantor to bring a civil action to enjoin a foreclosure sale under this chapter may not be deemed a waiver of a claim for damages."[23] It did not. The legislature's decision to limit the statute's safe harbor to four types of damage claims shows that the legislature did not intend to protect other claims from waiver if the requirements of notice, knowledge of a defense, and failure to enjoin the sale are satisfied.[24]

Here, the Patricks concede that they did not use the DTA's procedure to restrain the trustee's sale.[25] And they do not contest that Wells Fargo established the three waiver elements, as the Patricks had notice of the sale, knew of the defenses they now assert, and did not try to enjoin the sale.[26] The Patricks assert that the sale was void because "there was no default." No

---

[21] Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 796, 295 P.3d 1179 (2013).
[22] Frizzell v. Murray, 179 Wn.2d 301, 311, 313 P.3d 1171 (2013) ("We have not yet had occasion to discuss the interplay of the waiver provision in RCW 61.24.040(1)(f)(IX) with RCW 61.24.127(1).").
[23] RCW 61.24.127(1).
[24] See Plein, 149 Wn.2d at 227; Brown, 146 Wn. App. at 166.
[25] See RCW 61.24.040(1)(f)(IX), .130(1).
[26] See RCW 61.24.130.

evidence supports this view. They concede that they did not make 31 payments owed under the note. And while they contend that waiver is unfair because they have grounds to challenge the sale, those are the very claims they waived.[27]

RCW 61.24.127(1) protects the Patricks from waiver of their CPA claims and their DTA claim against the trustee. But because the legislature did not protect any claims besides those listed in RCW 61.24.127, the Patricks waived the rest of their damages claims by failing to use the DTA's procedure to obtain a presale injunction.

### CPA Claim against Wells Fargo

A CPA claim has five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."[28] Because the Patricks did not present evidence to create a genuine issue of material fact about causation, we affirm the trial court's dismissal of their CPA claim against Wells Fargo.

A claimant must show a causal link "between the unfair or deceptive acts and the injury suffered."[29] That link must establish that the alleged injury would

---

[27] See Frizzell, 179 Wn.2d at 309 ("It is not inequitable to conclude that [the borrower] waived her sale claims where she had knowledge of how to enjoin the sale and failed to do so through her own actions.").

[28] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[29] Hangman Ridge, 105 Wn.2d at 793.

not have occurred "but for" the defendant's unlawful acts.[30] Establishing causation thus depends on the deceptive or unfair practices that violated the CPA.[31] If reasonable minds could not differ, this court may determine the factual question of causation as a matter of law.[32]

The Patricks suffered an injury to business or property when the trustee sold their home. They also spent time and money communicating with Wells Fargo.[33] They allege that Wells Fargo caused these injuries with five unfair or deceptive acts or practices: (1) pretending to consider them for a loan modification; (2) inducing them to default by telling them to miss mortgage payments, then continually giving them conflicting information and redundant or futile requests for documents; (3) failing to comply with DTA requirements to provide certain documents;[34] (4) failing to mediate in good faith; and (5) violating the DTA by pursuing foreclosure. The Patricks did not present enough evidence to create a genuine issue of fact that these acts were a "but for" cause of their injuries.

---

[30] Schnall v. AT&T Wireless Servs., Inc., 171 Wn.2d 260, 278, 259 P.3d 129 (2011) (quoting Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 82, 170 P.3d 10 (2007)).

[31] Indoor Billboard, 162 Wn.2d at 84.

[32] Sherman v. State, 128 Wn.2d 164, 184, 905 P.2d 355 (1995).

[33] Mental distress and other personal injuries the Patricks assert do not qualify as injuries to business or property under the CPA. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 57, 204 P.3d 885 (2009).

[34] See RCW 61.24.163(5)(j).

First, the Patricks do not show that Wells Fargo's correspondence about their applications for a loan modification was an unfair or deceptive act or practice that caused their injuries. Wells Fargo considered those applications and repeatedly told the Patricks that they did not qualify. Wells Fargo's internal guidelines provide that a borrower must be in or near default to qualify for a loan modification.[35] The Patricks concede that they could afford their payments and initially were not in or near default. Rejecting the Patricks' application was therefore consistent with Wells Fargo's guidelines. Wells Fargo "knowingly solicit[ing] and accept[ing] modification application documents" in this situation was not unfair or deceptive, as Wells Fargo needed to look at the Patricks' applications to tell whether they qualified.

Nor did the Patricks present evidence that Wells Fargo caused their injuries by inducing them to default. They offered no evidence of that inducement other than their declarations. Those declarations do not provide the specific facts needed to survive summary judgment.[36] The forbearance agreement the Patricks signed stated that they did not default intentionally. Moreover, the Patricks' counsel conceded to the trial court that Wells Fargo did

---

[35] A modification would not have been automatic, as the federal loan program had other requirements.

[36] See Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 25, 851 P.2d 689 (1993) ("Affidavits containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment.").

not promise them a modification but only informed them they could not qualify for one while current on their payments.[37]

The Patricks did not present evidence that Wells Fargo caused their injuries by acting in bad faith in mediation or violating the DTA's documentation requirements. While they allege that Wells Fargo gave them conflicting reasons for their rejection and used incorrect information to calculate the NPV of their loan, they do not support these allegations with evidence.[38] Nor do they cite authority indicating that poor communication at a mediation, like providing conflicting information, constitutes bad faith. The mediator certified that both parties mediated in good faith.[39]

Finally, while the Patricks are correct that Wells Fargo had to satisfy the DTA's documentation requirements for the trustee's sale to proceed,[40] they did

---

[37] Even if Wells Fargo made such an oral promise, we would have cause to doubt the reasonableness of the Patricks' reliance on it. Loan modification agreements must be in writing under the credit agreement statute of frauds. RCW 19.36.110; Cowlitz Bank v. Leonard, 162 Wn. App. 250, 253, 254 P.3d 194 (2011).

[38] The Patricks assert that NPV worksheets they provide in the record show that using the correct inputs, they qualified for a modification. Without a declaration from an expert, this court is not in a position to credit that assertion.

[39] See RCW 61.24.163(13) ("If the parties are unable to reach an agreement, the beneficiary may proceed with the foreclosure after receipt of the mediator's written certification.").

[40] RCW 61.24.030(9). RCW 61.24.163(5)(j) requires that within 20 days of receiving the borrowers' documents, the beneficiary send to the borrowers and the mediator "[t]he portion or excerpt of the pooling and servicing agreement or other investor restriction that prohibits the beneficiary from implementing a modification . . . and documentation or a statement detailing the efforts of the

not provide evidence that Wells Fargo failed to do so.[41]  The record shows the mediator attached the required documents to the good-faith certificate.

In short, the Patricks point to no evidence that but for unfair or deceptive acts or practices by Wells Fargo, they would have obtained a loan modification and the trustee would not have sold their home.  Instead, the record shows that Wells Fargo had no obligation to offer the Patricks a modification and that the Patricks' failure to make 31 payments on their loan, cure their default, or attempt to restrain the foreclosure sale caused the trustee's sale.  The trial court did not err in granting the defendants summary judgment on the Patricks' CPA claim.

### DTA and CPA Claims against Quality Loan

The Patricks also did not present evidence to support their claims against the successor trustee, Quality Loan, and McCarthy & Holthus LLP (M&H).

The Patricks allege that in selling their home in foreclosure and charging them certain fees, Quality Loan violated several provisions of the DTA, thus violating the CPA.[42]

---

beneficiary to obtain a waiver of the pooling and servicing agreement or other investor restriction provisions."

[41] The Patricks do not indicate when they sent their documents or cite to those documents in the record.

[42] RCW 61.24.030, .010(2), (3), (4).  RCW 61.24.030(3) requires a default before a trustee's sale can occur.  RCW 61.24.010 provides,

(3) The trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust.

First, the Patricks claim that Quality Loan violated RCW 61.24.030(3) by selling their home after the Patricks informed it that "there was no default." Again, the Patricks contend that they did not default because Wells Fargo told them to stop making payments. We disagree. And whatever actually caused the Patricks to miss payments, they do not dispute that they did not make them. That is a default satisfying RCW 61.24.030(3).[43]

Second, the Patricks claim that Quality Loan violated RCW 61.24.010(3) and (4) "by owing Wells Fargo a fiduciary duty" and violated its duty of good faith toward them by failing to act impartially. Attorney Robert McDonald represented Quality Loan when it responded to their complaint and earlier represented Wells Fargo at mediation. Quality Loan shares ownership and office space with McDonald's former firm, M&H, which represented Wells Fargo. Quality Loan notes that McDonald never worked for M&H and Quality Loan at the same time. It further points out that the Patricks do not describe any impact on them from McDonald representing both companies, whether successively or simultaneously.

---

(4) The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor.

As discussed above, the Patricks could not waive their claim for DTA or CPA claims against the trustee. See RCW 61.24.127(1)(c).

[43] The Patricks also suggest that Quality Loan should not have sold their home because they had filed a lawsuit. But as noted above, the Patricks did not follow the DTA's requirements for stopping the sale. RCW 61.24.130.

RCW 61.24.010(3) eliminates the fiduciary duty courts previously imposed on the trustee.[44] Still, "RCW 61.24.010(4) imposes a duty of good faith on the trustee toward the borrower, beneficiary, and grantor."[45] "This duty requires the trustee to remain impartial and protect the interests of all the parties."[46] The trustee may not as a practice "defer[ ] to the lender on whether to postpone a foreclosure sale and thereby fail[ ] to exercise its independent discretion as an impartial third party."[47] A breach of these duties supports a claim for damages under the CPA.[48]

Here, the Patricks make no showing that the trustee improperly deferred to the lender and thus breached its duty of good faith. Although a lawyer's dual representation of a lender and trustee might raise questions about the trustee's good faith in some circumstances, the Patricks offered no evidence of bad faith here. They have not shown any reason the trustee should not have foreclosed, like, for example, doubts about the identity of the note holder.[49] They claim only

---

[44] Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 93 n.4, 285 P.3d 34 (2012); see Klem, 176 Wn.2d at 805-06 (Madsen, C.J., concurring).

[45] Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 787, 336 P.3d 1142 (2014).

[46] Lyons, 181 Wn.2d at 787.

[47] Klem, 176 Wn.2d at 792. The Supreme Court has expressed skepticism that an attorney for a party who also acts as the trustee can fulfill its duty of good faith. Schroeder v. Excelsior Mgmt. Grp., LLC, 177 Wn.2d 94, 101 n.3, 297 P.3d 677 (2013).

[48] Lyons, 181 Wn.2d at 787.

[49] See Lyons, 181 Wn.2d at 789.

that the requisites to sale were not satisfied because "there was no default" and they did not receive the documents they were entitled to.[50] As noted above, the Patricks did default. And they offer no evidence the trustee violated the DTA's document requirements.

The Patricks finally contend that Quality Loan violated the CPA because certain fees and costs, incurred three years before Quality Loan became trustee, constitute an unfair or deceptive act. The Patricks cite no support for their contention that Quality Loan's charges were unlawful or part of a "profit driven scheme aimed at forcing desperate homeowners to pay additional, unreasonable, and unlawful fees." We decline to consider this unsupported argument.[51]

<u>Declarations in Support of Summary Judgment</u>

Finally, the Patricks contend that declarations of Annette Cook, managing attorney for M&H, and Sierra Herbert-West, trustee sales officer at Quality Loan, contained inadmissible hearsay and were not based on personal knowledge.

---

[50] The Patricks point to substantial redactions in the correspondence between Wells Fargo and Quality Loan. If the Patricks believed the documents were improperly redacted, they could have brought a motion in the trial court. We cannot infer bad faith from the redaction alone.

[51] See <u>Palmer v. Jensen</u>, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

A party moving for or opposing a motion for summary judgment may support its position with affidavits setting forth admissible evidence.[52] A qualifying business record is admissible as an exception to the hearsay rule so long as it is relevant and a "custodian or other qualified witness testifies to its identity and the mode of its preparation."[53] "Reviewing courts interpret the statutory terms 'custodian' and 'other qualified witness' broadly."[54] A declaration statement based on a review of business records satisfies the personal knowledge requirement if the declaration satisfies RCW 5.45.020.[55]

Both challenged declarations satisfy the requirements of CR 56(e) and RCW 5.45.020. Cook and Herbert-West declared under penalty of perjury that they were officers of M&H and Quality Loan, respectively; they had personal knowledge of their companies' practices of maintaining business records; and they had personal knowledge of the subject matter of their declarations from their own review of their organizations' records. Herbert-West further declared that the affidavit of mailing attached to her declaration was a true and correct copy of a document made in the ordinary course of business at or near the time of the

---

[52] CR 56(e).

[53] RCW 5.45.020. The record must have been "made in the regular course of business, at or near the time of the act, condition or event," and the trial court must be satisfied that "the sources of information, method and time of preparation were such as to justify its admission."

[54] Barkley v. GreenPoint Mortg. Funding, Inc., 190 Wn. App. 58, 67, 358 P.3d 1204 (2015), review denied, 184 Wn.2d 1036 (2016).

[55] Barkley, 190 Wn. App. at 67.

transaction. The Patricks do not identify any genuine issue of material fact about the qualifications of Cook and Herbert-West or the authenticity of the attached documents. Nor do they explain how the trial court's consideration of either affidavit could have affected its decision on the summary judgment motion. For both declarations, the trial court stated, "To the extent there's hearsay in [them], that will be stricken." The trial court did not err by not excluding the declarations.

## CONCLUSION

Because the Patricks failed to present evidence sufficient to create a genuine issue of material fact as to each element of their CPA or DTA claims and because they waived their remaining claims by not using the statutory procedure for restraining the trustee's sale, we affirm.

_Leach, J._

WE CONCUR:

_____

_Spearman, J._

2016 SEP 26 AM 9: 50
COURT OF APPEALS
STATE OF WASHINGTON