IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HENRY MILLER, | ) | |
| | ) | No. 78044-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| U.S. BANK, N.A.; ASSET | ) | |
| FORECLOSURE SERVICES, INC.; | ) | |
| PEAK FORECLOSURE SERVICES OF | ) | |
| WASHINGTON, INC., | ) | |
| | ) | |
| Appellants, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | FILED: October 28, 2019 |
| | ) | |
| DOE DEFENDANTS 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

SMITH, J. — U.S. Bank N.A., Asset Foreclosure Services Inc., and Peak Foreclosure Services of Washington Inc. (collectively the Bank Parties) appeal from the trial court's denial of their motion to dismiss Henry Miller's claim for equitable relief to set aside a foreclosure sale. Because Miller failed to raise a genuine issue of material fact as to whether he waived that claim,[1] we reverse and remand to the trial court with instructions to enter summary judgment in favor of the Bank Parties on Miller's claim for equitable relief.

---

[1] The trial court converted the Bank Parties' motion to dismiss to a motion for summary judgment.

FACTS

In June 2008, Miller obtained a $393,820 home mortgage loan from U.S. Bank. In connection with the loan, Miller signed a promissory note and a deed of trust encumbering his home in Seattle. Shortly after obtaining the loan, Miller's business began to struggle, and Miller fell behind on his loan payments. In August 2009, Chicago Title Company of Washington, LSI Division, as successor trustee, recorded a notice of trustee's sale for Miller's home. That sale never occurred and in September 2009, U.S. Bank offered Miller a forbearance. In October 2010, the parties entered into a loan modification agreement.

Miller's business continued to struggle, and Miller again fell behind on his loan payments. In May 2012, Asset, as "Agent for the Trustee and/or Agent for the Beneficiary," sent Miller a notice of default. Miller responded to the notice by trying to get another loan modification. His efforts ultimately were unsuccessful.

In August 2012, Miller received a notice of trustee's sale from Peak, as successor trustee. That sale also did not occur as scheduled, though the record is not entirely clear as to why. It appears, however, that the reason may have been that Miller made a complaint to the Washington State Attorney General's Office (AGO), which made an inquiry of U.S. Bank on Miller's behalf. Although the inquiry itself is not in the record, U.S. Bank's response indicates that Miller raised a concern that U.S. Bank's foreclosing trustee was not a domestic corporation with at least one Washington officer, as required under Washington's deeds of trust act (DTA), chapter 61.24 RCW. Specifically, U.S. Bank clarified in its letter that although its legal counsel, Asset, did reside in California, the

2

trustee, Peak, resides in the State of Washington.

In May 2013, Miller received another notice of trustee's sale from Peak. After receiving this notice, Miller contacted a housing counselor, who requested a foreclosure mediation. In September 2013, while the mediation process was pending, Miller also filed suit against U.S. Bank and Mortgage Electronic Registration Systems Inc. (MERS) to enjoin the foreclosure sale. Ultimately, that sale also did not occur, and Miller dismissed his lawsuit against U.S. Bank and MERS under a confidential settlement agreement.

In February 2014, Peak again issued a notice of trustee's sale, setting a sale date of June 27, 2014. The notice refers to a notice of default transmitted to Miller on January 10, 2014. Miller asserts that he is "not sure" if he received the January 2014 notice of default, and his declaration is silent as to whether he received the notice of trustee's sale. But he states that he was "unaware that the foreclosure was going to actually happen because [he] had been in regular communication with U.S. Bank about foreclosure avoidance options." The foreclosure nevertheless did occur on October 10, 2014. U.S. Bank was the successful bidder, and a trustee's deed was recorded on October 24, 2014. After he was notified that the sale had occurred, Miller contacted attorney David Leen. Leen sent a letter to U.S. Bank in November 2014, stating that he believed the sale was void for a number of reasons and demanding "that the Trustee's deed be recalled and that no efforts be taken to evict [Miller]."

In August 2015, U.S. Bank sent Miller a notice to vacate. Leen responded on Miller's behalf, again asserting that the foreclosure sale was defective.

3

According to Miller, "[w]hat followed was silence by U.S. Bank until late in December 2016 when [Miller] was served with a Summons and Complaint in an eviction case." On March 10, 2017, the court entered a writ of restitution against Miller and his family, requiring them to be removed from the property.

That same day, Miller filed the present lawsuit against the Bank Parties. He alleged four causes of action: (1) equitable relief to set aside the sale (void-sale claim), (2) misrepresentation, (3) breach of the duty of good faith and other DTA requirements, and (4) violation of the Washington Consumer Protection Act, chapter 19.86 RCW. Miller also moved for a preliminary injunction "to prevent the transfer of title to his home." The motion was supported by declarations from Miller and from his counsel. The record does not reflect the outcome of the motion.

In December 2017, Peak and Asset moved under CR 12(b)(6) to dismiss Miller's claims, arguing that they were time barred under RCW 61.24.127, which lists certain claims that a borrower does not waive even if he fails to bring an action to enjoin a nonjudicial foreclosure sale—but that nonetheless must be brought within the time limits set forth in that statute. U.S. Bank joined the motion and argued further that Miller's claims were barred by res judicata and collateral estoppel as a result of arguments that Miller made during the eviction proceeding. Miller opposed the Bank Parties' motion, arguing among other things that RCW 61.24.127 does not apply because Asset and Peak never had the authority to foreclose. Specifically, Miller argued that Asset (which is located in California) was the entity actually acting as the foreclosing trustee, and "was

4

using the sham identification of . . . Peak as the trustee to try to give the false impression" that Asset and Peak were in compliance with Washington law.

The trial court treated the Bank Parties' motion as a summary judgment motion and granted it, in part. Specifically, except for the void-sale claim, the court dismissed Miller's claims as time barred by RCW 61.24.127. The court concluded that the void-sale claim was not barred by RCW 61.24.127 because that claim was "not included among the types of claims listed in RCW 61.24.127(1)." It ruled that "[t]he void-sale claim should be allowed to proceed to trial to determine whether, after considering all of the facts and circumstances, [Miller] should be deemed to have waived his right to assert that claim" and "whether [Miller] 'promptly' brought his claim, or 'slept on his rights.'" We granted the Bank Parties' motion for discretionary review of the court's decision not to dismiss the void-sale claim.

ANALYSIS

Void-Sale Claim

The Bank Parties argue that the trial court erred by not dismissing Miller's void-sale claim. We agree.

We review summary judgment orders de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR 56(c)). "In a summary judgment motion, the moving party bears the

5

initial burden of showing the absence of an issue of material fact." Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). To that end, in the DTA context, the recitals in the trustee's deed stating that the sale was conducted in compliance with the DTA "shall be prima facie evidence of such compliance." Former RCW 61.24.040(7) (2012);[2] RCW 61.24.040(11); Plein v. Lackey, 149 Wn.2d 214, 228, 67 P.3d 1061 (2003).

If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to bring forth specific facts to rebut the moving party's contentions. Elcon Constr., 174 Wn.2d at 169. "The nonmoving party may not rely on speculation, argumentative assertions, 'or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.'" Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011) (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and he fails to make a factual showing sufficient to establish an element essential to his case, summary judgment is warranted. Young, 112 Wn.2d at 225.

Here, and as further discussed below, the Bank Parties met their initial burden to establish the absence of any material fact as to whether Miller waived his void-sale claim, and Miller failed to set forth specific facts to disclose the

---

[2] This language now appears in RCW 61.24.040(11).

6

existence of a genuine issue of material fact as to waiver. Therefore, the trial court erred by not dismissing Miller's void-sale claim.

The DTA "creates a three-party mortgage system allowing lenders, when payment default occurs, to nonjudicially foreclose by trustee's sale." Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012). The DTA has three goals: an efficient and inexpensive process, adequate opportunities for parties to prevent wrongful foreclosure, and stability of land titles. Albice, 174 Wn.2d at 567. In furtherance of these goals, the DTA specifies a procedure for stopping a trustee's sale. Plein, 149 Wn.2d at 225. That procedure is set forth in RCW 61.24.130, and failure to follow the specified procedure "*may* result in a waiver of any proper grounds for invalidating the Trustee's sale." Former RCW 61.24.040(1)(f)(IX) (2012) (emphasis added).[3]

Here, it is undisputed that Miller did not follow the procedure set forth in RCW 61.24.130 to stop the trustee's sale of his home. Therefore, the only questions before us are (1) whether Miller waived his void-sale claim and (2) if not, whether that claim is nonetheless time barred.

Courts may apply waiver where it "is equitable under the circumstances and . . . serves the goals of the [DTA]." Albice, 174 Wn.2d at 570. To that end, in Plein, our Supreme Court held that under the DTA, a borrower waives postsale challenges to a foreclosure sale if he "(1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the

_____

[3] This language now appears in RCW 61.24.040(2)(d)(IX). See LAWS OF 2018, ch. 306, § 2.

sale." Plein, 149 Wn.2d at 227, 229. Nevertheless, under RCW 61.24.127(1), which was enacted post Plein, "[t]he failure of the borrower or grantor to bring a civil action to enjoin a foreclosure sale . . . may not be deemed a waiver" of claims asserting: (a) common law fraud or misrepresentation, (b) a violation of Title 19 RCW, (c) the trustee's failure to materially comply with the DTA, or (d) a violation of RCW 61.24.026 (pertaining to short sales). These claims must, however, still satisfy certain requirements to be nonwaivable under RCW 61.24.127. As relevant here, they must: (a) be asserted within the earlier of two years from the date of the foreclosure sale or the expiration of the applicable statute of limitations, (b) not seek any remedy other than monetary damages, and (c) not affect the validity or finality of the foreclosure sale. RCW 61.24.127(2)(a)-(c).

In short, to determine whether a claim is waived under the DTA, the court first applies the Plein test and asks whether the borrower received notice of the right to enjoin the sale, had presale knowledge of a defense, and failed to enjoin the sale. If so, the claim is waived—unless it qualifies as a nonwaivable claim under RCW 61.24.127. See Patrick v. Wells Fargo Bank, N.A., 196 Wn. App. 398, 407, 385 P.3d 165 (2016) ("The legislature's decision to limit [RCW 61.24.127]'s safe harbor to four types of damage claims shows that the legislature did not intend to protect other claims from waiver if the requirements of notice, knowledge of a defense, and failure to enjoin the sale are satisfied."), review denied, 187 Wn.2d 1022 (2017).

To this end, we reject the Bank Parties' argument that if a claim is one of

the types of claims described in RCW 61.24.127(1), then it is categorically waived unless pursued within the time period specified in RCW 61.24.127(2). Specifically, the Bank Parties assert that *"[a]ll claims—including equitable claims to void a sale—are waived if they are not brought prior to a foreclosure sale, unless they fall within one of the four articulated exceptions"* set forth in RCW 61.24.127(1). (Emphasis added.) In other words, the Bank Parties contend that if a claim is not protected from waiver by RCW 61.24.127, then it is waived *regardless whether the Plein waiver requirements of notice, knowledge of a defense, and failure to enjoin the sale are satisfied.*

But the cases on which the Bank Parties rely do not support their argument. Specifically, in both Patrick and Manning v. Mortgage Electronic Registration Systems, Inc. (an unpublished opinion), it was undisputed that the Plein waiver requirements were satisfied. See Patrick, 196 Wn. App. at 407 ("Here, the Patricks concede that they did not use the DTA's procedure to restrain the trustee's sale. And they do not contest that Wells Fargo established the three waiver elements, as the Patricks had notice of the sale, knew of the defenses they now assert, and did not try to enjoin the sale."); Manning v. Mortg. Elec. Registration Sys., Inc., No. 73908-5-I, slip op. at 8 (Wash. Ct. App. Oct. 31, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/739085.pdf ("The Mannings do not contest that they received notice of their right to enjoin the sale, knew of the defenses to foreclosure they now assert, and did not bring an action to stop the sale as authorized by the DTA."). Therefore, the only issue before us in those cases was whether the borrower's postsale claims were nonwaivable

9

under RCW 61.24.127. And in Frizzell v. Murray, the court applied Plein and concluded that the borrower's claim was waived—but remanded to the trial court to determine whether the claim was nonwaivable under RCW 61.24.127. 179 Wn.2d 301, 312-13, 313 P.3d 1171 (2013). These cases do not, as the Bank Parties contend, support the proposition that Plein no longer applies to claims that are not protected from waiver by RCW 61.24.127. Furthermore, concluding that a claim is not necessarily waived—even if it is not protected from waiver by RCW 61.24.127—would not, as the Bank Parties suggest, "permit borrowers bringing actions to void completed foreclosure sales in perpetuity." Rather, otherwise applicable statutes of limitations would still apply, as would equitable doctrines such as laches.

In short, RCW 61.24.127 merely sets forth the types of postsale claims that cannot be waived *even if* the Plein waiver requirements are satisfied. But the fact that a claim is *not* protected from waiver by RCW 61.24.127 does not necessarily mean that it is waived if not brought prior to the foreclosure sale. Rather, as discussed, waiver under the DTA involves a two-part analysis: The court first applies Plein to determine whether the requirements of waiver have been satisfied. If so, the court also considers whether the claim is nonetheless nonwaivable under RCW 61.24.127. See Patrick, 196 Wn. App. at 407 ("The legislature's decision to limit [RCW 61.24.127]'s safe harbor to four types of damage claims shows that the legislature did not intend to protect other claims from waiver *if the requirements of notice, knowledge of a defense, and failure to enjoin the sale are satisfied.*") (emphasis added). Applying this two-part analysis

10

here, we conclude that the trial court erred by not dismissing Miller's void-sale claim.

Specifically, turning to the first element of waiver: The recitals in the trustee's deed, which are prima facie evidence of compliance with the DTA, state that a notice of trustee's sale was executed and recorded on February 14, 2014, under recording number 20140214000859, and was "transmitted by mail to all persons entitled thereto." That notice contained the required statutory notice of the right to enjoin the sale, stating:

> Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the same pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's Sale.

Miller does not dispute receiving this notice. At most, he claims that he did not think the foreclosure sale "would actually happen" because he had been in communication with U.S. Bank about foreclosure avoidance options. But believing that an impending foreclosure sale will not "actually happen" is not the same as not receiving notice of it in the first place. Therefore, Miller has not raised a genuine issue of material fact as to the first element of waiver, i.e., that he received notice of his right to enjoin the sale.

Miller disagrees, contending that he "testified that he did not receive the notices of the sale nor did he receive notices of continuance." But this is not an accurate characterization of Miller's testimony. He testified that he was "not sure" if he received a notice of *default*. He also testified that he did not receive a "Notice of Pre-Foreclosure Options" or any continuance notices. But his

11

testimony *does not* set forth specific facts to rebut that he received notice of his right to enjoin the sale. Therefore, his argument is unpersuasive.

Turning next to whether Miller had actual or constructive knowledge of a defense to foreclosure prior to the sale: "[I]n applying the waiver doctrine, a person is not required to have knowledge of the legal basis for his claim, but merely knowledge of the facts sufficient to establish the elements of a claim that could serve as a defense to foreclosure." Brown v. Household Realty Corp., 146 Wn. App. 157, 164-65, 189 P.3d 233 (2008). Here, Miller's void-sale claim is premised on his assertion that Peak and Asset lacked the authority to act as trustees because neither is a domestic corporation with at least one Washington resident officer. But Miller himself testified that when he talked to an AGO investigator, "she also talked to me about Peak Foreclosure and whether it really had an office in Washington." See former RCW 23B.05.010(1)(a) (2002) (requiring domestic corporations to continuously maintain a registered office in Washington). And Miller knew, as early as May 2013, that Asset resided in California, as confirmed by U.S. Bank in its response to the inquiry made by the AGO on Miller's behalf. In other words, Miller had, no later than May 2013, knowledge of facts sufficient to pursue his void-sale claim. Therefore, Miller has not raised a genuine issue of material fact as to the second element of waiver, i.e., that he had presale knowledge of a defense to foreclosure.

Miller again disagrees, asserting that he "had no way to know that Defendants Peak and Asset were not compliant with the requirements of the DTA until after he consulted with Mr. Leen after the foreclosure sale had occurred."

12

But Miller's assertion amounts to an argument that, notwithstanding any presale knowledge of the *factual* basis for his void-sale claim, he did not know he had a *legal* claim until he saw an attorney. Washington courts have roundly rejected that argument in the discovery rule context, and we do so here as well. See Reichelt v. Johns-Manville Corp., 107 Wn.2d 761, 772, 733 P.2d 530 (1987) (The plaintiff "would have us adopt a rule that would in effect toll the statute of limitations until a party walks into a lawyer's office and is specifically advised that he or she has a legal cause of action; that is not the law."); see also Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wn.2d 15, 35, 864 P.2d 921 (1993) ("The key consideration under the discovery rule is the factual, as opposed to the legal, basis of the cause of action.").

Finally, with regard to the third element of waiver, it is undisputed that Miller "'failed to bring an action to obtain a court order enjoining the sale.'" Patrick, 196 Wn. App. at 406 (quoting Plein, 149 Wn.2d at 227).

In sum, because Miller failed to raise a genuine issue of material fact as to any of the three elements of waiver, Miller's void-sale claim is waived unless it qualifies as nonwaivable under RCW 61.24.127. But because Miller asserted his void-sale claim more than two years after the date of the foreclosure sale and seeks not money damages—but rather to void the sale—it does not. RCW 61.24.127(2). Miller waived his void-sale claim, and the trial court erred by not dismissing it.

Miller relies on Albice to defend the trial court's decision not to dismiss his void-sale claim. In Albice, the borrowers entered into a forbearance agreement

13

with the bank after they received a notice of trustee's sale. 174 Wn.2d at 564. The borrowers tendered all of the payments due under the forbearance agreement but were late making each payment. Albice, 174 Wn.2d at 564. The bank accepted each of the late payments except for the very last one, and it continued the trustee's sale with receipt of each late payment—except for the very last one. Albice, 174 Wn.2d at 564. Additionally, although the forbearance agreement provided that a 10-day written notice would be sent upon a breach, the borrowers never received that notice. Albice, 174 Wn.2d at 564. Under these facts, our Supreme Court concluded that the borrowers did not waive their postsale challenges to the trustee's sale. Albice, 174 Wn.2d at 571. In doing so, it observed that the borrowers "had no knowledge of their alleged breach in time to restrain the sale" and that they never received the 10-day breach notice promised under the forbearance agreement. Albice, 174 Wn.2d at 571-72. Put another way, Albice is consistent with Plein: The Albice court declined to apply waiver because the borrowers did not have presale knowledge of a defense to foreclosure. The court did suggest that courts may also decline to apply waiver where doing so would not serve the goals of the DTA—for example, when a borrower does not have an adequate opportunity to prevent wrongful foreclosure. Albice, 174 Wn.2d at 570. But those are not the circumstances of this case, where Miller knew he was in default on his loan as early as May 2012, had presale knowledge of his defenses to foreclosure and even raised them to U.S. Bank twice after the foreclosure sale was complete—yet did not seek equitable relief until August 2017, more than two years after the foreclosure sale and only

after a writ of restitution had been entered. Miller's reliance on Albice is misplaced.

Miller's reliance on Schroeder v. Excelsior Management Group, LLC, 177 Wn.2d 94, 297 P.3d 677 (2013), is similarly misplaced. In Schroeder, the question was whether a borrower could contractually waive a statutory requirement of the DTA. 177 Wn.2d at 106. Our Supreme Court held that borrowers cannot waive the DTA's procedures by contract. Schroeder, 177 Wn.2d at 107. But the fact that a borrower cannot contractually waive the DTA's procedures does not mean that he cannot, by failing to try to enjoin the sale, waive the right to challenge a completed sale based on an alleged violation of those procedures. Indeed, unlike Miller, the borrower in Schroeder did try to stop the sale before it occurred. 177 Wn.2d at 101. Schroeder does not control.

Miller next argues that because the trial court did not conduct a full waiver analysis, deciding only that RCW 61.24.127 does not require his void-sale claim to be asserted within two years, a remand for further proceedings is appropriate given Miller's factual assertions related to the reasons that he did not enjoin the sale. But because, as discussed, Miller's factual assertions do not raise any genuine issue of material fact regarding waiver, further proceedings are not necessary.

As a final matter, the Bank Parties argue that the trial court erred by treating their motion to dismiss as a motion for summary judgment. But because dismissal of Miller's void-sale claim was warranted even under a summary judgment standard, we do not decide whether the trial court erred by converting

15

the Bank Parties' motion to dismiss to a motion for summary judgment.

## Attorney Fees

U.S. Bank argues that it is entitled to an award of attorney fees under RAP 18.1. We agree.

Attorney fees may be awarded on appeal only when authorized by a contract, a statute, or a recognized ground of equity. Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 839, 100 P.3d 791 (2004). Here, the deed of trust provides: "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." It provides further that "[t]he term 'attorneys' fees,' whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender . . . on appeal." Under the deed of trust, the term "Lender" means U.S. Bank, and "Security Instrument" refers to the deed of trust. Thus, U.S. Bank is entitled to a fee award because this appeal arises out of Miller's attempts to challenge U.S. Bank's enforcement of the deed of trust. Indeed, Miller does not argue otherwise. Therefore, we award U.S. Bank its reasonable attorney fees subject to its compliance with RAP 18.1.

We reverse and remand to the trial court with instructions to enter summary judgment in favor of the Bank Parties on Miller's void-sale claim.

_Smith, J._

WE CONCUR:

_Mann, ACJ_

_Verellen, J._

16